McEWAN BROS. & CO. *v.* CARPENTER.

LIENS—WAIVER—EVIDENCE.

> Evidence that the owner of logs gave his notes for the saw bill, and that the sawyers discounted the notes, and protected them in the hands of the holders by collateral security, is insufficient of itself to establish a waiver of the lien for sawing.

Error to Bay; Maxwell, J. Submitted November 12, 1896. Decided February 2, 1897.

Replevin by McEwan Brothers & Company against Alice M. Carpenter and another. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*Frank S. Pratt* (*Frank L. Fales*, of counsel), for appellant.

*E. A. Cooley*, for appellees.

MOORE, J. The plaintiff is a corporation doing a lumber and sawmill business at Bay City. In May, 1895, it made a contract with Alvin Maltby, the effect of which was to give it the ownership of one-half of a quantity of Norway logs. One of its reasons for making the contract was to keep its mill employed. The logs were to be cut and delivered by Maltby, and were to be sawed by the plaintiff. Maltby did not deliver the logs fast enough to keep the mill running, and the mill was shut down for a little time. While the mill was idle, the booms were filled with other logs, so that there was no room for the logs in question in plaintiff's booms, and some talk was had about keeping the logs back until there was room for them in plaintiff's booms. They were

not kept back, but began to arrive, and Maltby made a contract with defendants to saw them for two dollars a thousand, nothing being said about the time of payment, or how long the lumber might be on the docks without charges. The plaintiff knew nothing about the making of the contract at the time it was made, though it had been talked between Mr. McEwan and Mr. Maltby, and between Mr. McEwan and the manager of the defendants, that the logs might be sawed by the defendants. The record does not disclose that, at the time the contract was made, defendants knew that the plaintiff owned an interest in the logs.

During the process of manufacture, estimates were made of the amount manufactured, and Maltby, on July 29, 1895, gave defendants his note for $1,300, due November 1, 1895. August 8th he gave his note for $1,350, due November 11th. August 22d he gave his note for $550, due November 25th. These notes were indorsed by defendants, and discounted at the Lumberman's State Bank. When they were given, nothing was said about their being received in payment. Before any of these notes matured, and on October 8th, Maltby failed. On the 11th of October Maltby conveyed the half interest he owned in the logs and lumber to the plaintiff, who made a demand on the defendants for the lumber, which was then piled on their docks. The defendants had been paid no part of the sawing bill, unless the receiving of the notes by them was a payment, and refused to deliver the lumber until the sawing bill had been paid. The plaintiff brought replevin, and by direction of the court the jury returned a verdict in favor of defendants.

Defendants learned of the ownership of the plaintiff in a part of the lumber just after Maltby's failure. There was evidence showing that it was the custom to make the final adjustment of the saw bill after the lumber should be shipped, and that, at the time the last note was taken, defendants acted in the light of that custom, and that they also acted upon the assumption that Mr. Maltby

would ship the lumber when he got a customer, and that defendants considered Mr. Maltby's paper good at the time the notes were given, and that, at the time the notes were given, the defendants had no intention of resorting to a claim of a lien on the lumber for the said bill. It was admitted that the $1,300 note, at maturity, was the property of the American Exchange National Bank of Detroit, and that the $1,350 note was owned by the Canadian Bank of Commerce. The proof disclosed that the defendants indorsed the notes before they were discounted, and afterwards paid them, and produced them upon the trial. Plaintiff offered in evidence a chattel mortgage dated January 11, 1896, given by the defendants to the Lumberman's State Bank, to secure the payment of one note due November 1, 1895, for $1,300, one due November 11, 1895, for $1,350, and one due November 25th, for $550; and offered to show that the notes described in the chattel mortgage were the notes given by Maltby to defendants. Plaintiff also offered in evidence a chattel mortgage dated October 31, 1895, to the cashier of the Lumberman's State Bank, securing the payment of all notes held by the bank on which defendants were indorsers. It also offered a paper made by defendants October 19, 1895, transferring to Mr. Norrington a quantity of salt, consideration $10,000, and offered to show that, while the paper was made to Mr. Norrington, it was really held as a security by the bank. It also offered a bill of sale of a quantity of personal property, consideration $650, dated January 13, 1896, made by defendants to Norrington as cashier. On his own motion, the circuit judge refused to receive any of these papers, or any of this testimony, in evidence.

It is the claim of the plaintiff that the notes were received by the defendants as payment of the sawing bill, and that the giving of the chattel mortgages were acts of the defendants tending to show that they received the notes as payment, and had sold them, and appropriated the avails of them to their own use. It is also its

claim that the papers should have been received as tending to show who owned the notes, and that they had passed from the possession and beyond the control of the defendants. The plaintiff also claims that, whether the notes were received by defendants as payment or not, their acts were such as to indicate an intention to waive any lien they had at the common law upon the lumber. If the testimony had been received, it would not have been inconsistent with defendants' claim of a lien. We think the case is controlled by *Hughes* v. *Tanner*, 96 Mich. 113.

The judgment is affirmed.

The other Justices concurred.