## GERMAIN v. CENTRAL LUMBER CO.

1. LOGGING CONTRACT—AMBIGUITIES—PAROL EVIDENCE.

   Parol evidence is admissible to show that under a contract between a logger and a sawyer, which was ambiguous in certain of its provisions, it was contemplated that certain notes to be given for the saw bill were to be received in payment of the same.

2. SAME—SAWYER'S LIEN—RELEASE—ACCEPTANCE OF NOTES.

   A sawyer releases his lien by accepting notes in payment of the saw bill.

3. SAME—PAYMENT FROM SALE OF LUMBER.

   A sawyer waives his lien by accepting notes for his saw bill, and authorizing the owner of the lumber to sell it to pay the notes.

4. SAME—RENEWAL OF NOTES—EFFECT ON LIEN.

   A sawyer releasing his lien by accepting notes in payment of his saw bill does not reacquire a lien by renewing the notes.

5. SAME—EVIDENCE—SUFFICIENCY.

   Evidence that a sawyer aided a purchaser in locating lumber piled on his dock, pointing out to him specific piles as belonging to the logger from whom the same had been purchased, that he requested the purchaser to remove the same as soon as convenient, and that he assisted the inspector sent by the purchaser to make shipment of certain portions, asserting no lien for the saw bill until after several shipments, and then only when the logger became insolvent, is sufficient to support a finding that the sawyer waived his lien.

Error to Saginaw; Snow, J. Submitted January 27, 1899. Decided April 25, 1899.

Replevin by Edward Germain against the Central Lumber Company. From a judgment for plaintiff, defendant brings error. Affirmed.

*Hanchett & Hanchett* (*Humphrey & Grant*, of counsel), for appellant.

*Weadock & Purcell*, for appellee.

Moore, J. This case has been in this court before, and is reported in 116 Mich. 245. A reference to the case as reported will make it unnecessary to make so full a statement of the case as would otherwise be necessary. When the case was here, it was held the contract was not so plain in its terms that it was not susceptible of explanation by parol evidence. Then, as now, the defendant urged that the trial court should have directed a verdict in favor of the defendant, but the court said the questions involved were for the determination of the jury, under all the circumstances. The record in this trial is substantially the same as in the other, except that plaintiff offered more testimony to show that the notes which were given by the Howrys were received as payment of the saw bill, and more testimony was offered than before that defendant waived any lien it might have for the saw bill. There is no more reason now for saying the case is not one for the jury than there was when the case was here before. In the former opinion it was said:

"If the notes for the saw bill were given and received as payment, it was a waiver of the lien. If Mr. Linton surrendered possession of all the lumber to the plaintiff, and agreed that he might remove it, Mr. Linton at that time knowing that plaintiff claimed to have purchased it from the Howrys, that would be a waiver of the lien. These were questions for the determination of the jury. * * * There were two questions for the jury: *First*, whether the notes for the saw bill were received as payment for the sawing; *second*, whether there was such a surrender of the lumber by Linton, and taking possession of it by the plaintiff, as amounted to a delivery of the whole lumber purchased by plaintiff."

The errors assigned, in addition to the one already mentioned, relate to the admission of testimony, the refusal to give certain requests to charge, and the charge as given.

The deposition of the Howrys was taken. They testified the purpose in making the contract was to enable them to have paper to use and get discounted at the banks, and assist them in their lumbering operations, and

that the saw bill for sawing was paid by notes of J. W.
Howry & Sons. One of the Howrys said, "We agreed
to pay them $1.75 for sawing, and they accepted·in pay-
ment for same our notes." Another one of them said, "I
don't pretend to give the exact language that was used in
regard to how the saw bill was to be paid, but we were
to pay the saw bill with our notes, and we had the privi-
lege of renewing them if we desired." It is said this tes-
timony is incompetent, because the contract was in writ-
ing, and also because one of the witnesses said the agree-
ment was embraced in the writing, and his testimony
called for his construction of the contract. The whole
defense is based upon the theory that there was not, in
fact, a sale of 7,000,000 feet of logs at $12 a thousand from
Howry & Sons to the defendant, as indicated by the paper
of April 5, 1895, nor a sale in fact of a like quantity of
lumber at $12 a thousand by the defendant to Howry &
Sons, as indicated by the paper dated April 6, 1895, but
that the entire transaction was for the purpose of securing
the payment of $25,000 of paper which had been given
them by A. T. Bliss, president of the defendant company,
and $40,000 which was to be advanced by the defendant
company, and to enable it to get the sawing of the logs.
The officers of the company testified there never was in
fact a purchase of the logs by them at $12 a thousand, or
a sale by them of the lumber at a like sum, and it was
never expected there would be. It is to be observed that
the paper of April 5th does not indicate when or how the
difference between the $65,000 of the · paper mentioned
therein and the $84,000, the price of the logs, is to be paid.
The paper of April 6th is also silent as to the terms of
payment for the lumber. It provides that notes shall be
given for the saw bill, but it does not say by whom they
shall be given, for what length of time, or the rate of
interest, or whether they shall be received as payment of
the saw bill. The most casual inspection of these papers
indicates that, unexplained, they do not contain the con-
tract of the parties. To establish the defense, parol testi-

mony was essential. Without it, the defense could not be made. We think it was competent to explain the ambiguities of the contract, not for the purpose of varying it or contradicting it, but to show what, in fact, the contract was.

The court refused to give some of the written requests of counsel for defendant, but in his general charge he gave the substance of all of them which were competent to be given. Without quoting all of the charge, the jury were charged as follows:

"The defendant requests the court to charge you, and he does charge you, that the evidence shows that the defendant sawed for J. W. Howry & Sons, under the contracts made between them dated April 5, 1895, and April 6, 1895, put in evidence by the plaintiff, logs at $1.75 per M. feet, making a total saw bill of $14,137.78. Under the terms of said contract the defendant would acquire a lien upon the whole of the lumber sawed for the amount of the saw bill. The defendant would have a right to permit any part of the lumber to be removed by J. W. Howry & Sons, or by parties to whom they made sales of the lumber, and when so doing might retain a lien upon all of the lumber not yet removed for all of the saw bill not paid, if they had not before that released it; that is, if they had not before that released their lien, if they had one. All that was necessary to retain a lien upon any part of the lumber was that the defendant keep possession of such lumber. The sale to Germain would be subject to the lien which defendant had upon the lumber, whether Germain in fact knew of the lien or not, if they had a lien. The evidence shows that, when Mr. Germain bought the lumber, he knew it had been sawed by the defendant, and that it was upon the defendant's docks and premises. These facts are notice to him of any lien the defendant had on the lumber for saw bill, if they had any. The plaintiff claims that the defendant did not have a lien on the lumber for saw bill. The burden of proof is upon the plaintiff to show, by preponderance of the evidence, that the defendant did not have such a lien. The giving of notes in renewal of notes first given for the saw bill would not discharge the lien, and any number of such renewals would not discharge the lien, unless the notes were taken as payment by agreement in the first instance.

"The plaintiff requests the court to charge you, and he does so charge you, as follows: The construction of written contracts is for the courts, unless their terms are so ambiguous as to require explanation. The contract between the Howrys and the Central Lumber Company, in reference to the method of the payment of the saw bill, is not so plain in its terms as to whether or not the notes given for the saw bill were intended to be given in payment therefor, and evidence has been introduced on this question. I therefore charge you that if, from the evidence, you find it was the intention of the parties that the giving of the notes specified in the contract should be given and accepted in payment of the saw bill of the lumber in question, then the defendant had no lien for saw bill, and your verdict would be for plaintiff. If, from the evidence in the case, you find, by the conduct of the parties in the giving of the notes for the saw bill and the renewal of them for a period of time extending beyond the original six months specified in the contract, that it was understood between the Central Lumber Company and J. W. Howry & Sons that the lumber should be sold by the Howrys to obtain the money with which to pay the notes, then it is conduct that amounted to a waiver of any lien they had for saw bill, if they ever had one. If, from the evidence in the case, you find that the Central Lumber Company accepted the notes of J. W. Howry & Sons in payment for the saw bill, then the defendant would have no lien for saw bill; and the renewal of these notes, no matter how many of them were renewed, such renewals would not give the defendant any lien for the saw bill, and the plaintiff is entitled to recover."

We think this was a fair statement of the law applicable to the case.

There is a sharp conflict in the testimony, but it is claimed on the part of defendant that, giving the testimony of the plaintiff the most favorable construction possible, it does not show a relinquishment of the lien upon the lumber, and that the case is governed by *Hughes v. Tanner*, 96 Mich. 113; *McEwan Bros. & Co. v. Carpenter*, 111 Mich. 522. We do not think those cases control. In this case, not only were notes given for the saw bills, which were discounted by defendant, some of

which were afterwards renewed, but there was testimony that, before plaintiff bought the lumber, he went upon the docks of defendant for the purpose of seeing the lumber. Mr. Linton, the manager of the defendant company, testified that he knew Mr. Germain was engaged in the business of buying lumber, and was there looking at the lumber with a view of purchasing it; and he told him all of the lumber on the dock not marked up as sold belonged to the Howrys, and did not tell him the defendant had a claim on it for the saw bill. The plaintiff testified that, after he bought the lumber, he went upon the docks where the lumber was, and had a conversation with Mr. Linton, in which he informed him he had bought the balance of the Howry lumber, that he had also bought some lumber from Hargrave's dock, and was pressed to move it, as they were limited for dock room, when Linton said "he was pleased I had bought it, but he was not so pressed for dock room, but hoped I would move it when convenient for me; so long as they had dock room it was immaterial how soon I moved it." The record also discloses that, as early as June 13th, Mr. Germain sent inspectors to the dock to inspect the lumber, and a lighter to carry some of it away, and that one of the inspectors made a list of all the piles of lumber which had been sold by Howry & Sons to Germain, and that Linton pointed out lumber which he said was the Howry lumber, and called attention to piles from which the mark had been removed as lumber that should go to Mr. Germain. There was evidence that Mr. Linton stated to the inspectors who were employed to inspect the lumber that all the Howry lumber on the dock, except that sold to Randall & Boyd, belonged to Germain. One witness testified Linton said that Germain had bought all the Howry lumber, and that all the lumber on the dock marked "J. W. H. & Sons" went to Germain, except some certain piles that were to go to Randall & Boyd, "part of which our inspectors had taken," and Germain's inspectors were to leave some of the same kind for Randall & Boyd. He said the balance

of the lot went to Germain,—was sold to Germain. Shipments were made by Germain's inspectors from that time until July 16th, when the Howrys suspended, without defendant making any claim to anybody that it claimed a lien upon the lumber for the saw bill. We think there was abundant evidence from which the jury might find the lien had been waived.

Judgment is affirmed.

The other Justices concurred.