RIVER ROUGE SAVINGS BANK *v.* S & M
BUILDING COMPANY.

SAME *v.* VICTOR BUILDING COMPANY.

SAME *v.* GILBERT CONSTRUCTION COMPANY.

SAME *v.* LeBLANC CONSTRUCTION COMPANY.

1. MECHANICS' LIENS—MORTGAGES—RECORDING—PRIORITY.
    Mechanics' liens for construction which was commenced prior to
    the giving or recording of mortgages would have priority over
    such mortgages (CL 1948, § 570.9).

2. TAXATION—FEDERAL TAX LIENS—MECHANICS' LIENS—PRIORITY.
    Federal tax liens for withholding and excise taxes attach to all
    property and rights to property of the taxpayer as of the
    date of assessment and are valid against all subsequent claims
    or liens against the taxpayer's property except they are not
    valid as against any mortgagee, pledgee, purchaser, or judg-
    ment creditor until notice is filed, and inchoate, unperfected
    mechanics' lien claims are not within the exception (26 USC,
    §§ 6321–6323; CL 1948, §§ 570.4, 570.9).

3. MECHANICS' LIENS—STATEMENT OF CONTRACTOR—FILING—SERVICE.
    Finding of trial court that contractor had made a sufficient
    attempt to locate owners or their agents in the county before
    filing the lien but did file such lien and served statement of
    the contractor on the owner in another county within statutory
    period *held,* proper under record submitted, the lien becoming
    effective at time of service upon the owner under the circum-
    stances (CL 1948, § 570.4).

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  36 Am Jur, Mechanics' Lien § 181.
    Time when contractor commenced work or time when labor or
    material for which lien is claimed was furnished as date of
    mechanics' lien. 83 ALR 925.
[2]  51 Am Jur, Taxation §§ 1016, 1018.
[3]  36 Am Jur, Mechanics' Lien § 128.
[4, 5, 14]  36 Am Jur, Mechanics' Lien §§ 290, 291.
[6]  36 Am Jur, Mechanics' Lien § 289; 51 Am Jur, Taxation § 1111.
[7]  54 Am Jur, United States § 134.
[9, 11]  36 Am Jur, Mechanics' Lien §§ 201, 202.
    What amounts to waiver of right to mechanics' lien.   65 ALR
    282.
    Recovery under mechanics' lien as affected by acceptance of
    written obligation from contractor or subcontractor.   66 ALR
    352.
[10, 12]  8 Am Jur, Bills and Notes §§ 322, 927.
[13]  37 Am Jur, Mortgages §§ 868 *et seq.,* 874.

4. Same—Costs—Attorney Fees—Discretion of Court.

The award of costs and attorney fees in suits involving mechanics' liens is discretionary with the court (CL 1948, §§ 570.12, 570.21).

5. Same—Costs—Attorney Fees—Discretion of Court.

It was an abuse of discretion on the part of the trial court to deny reasonable costs and attorney fees to mechanics' lien claimants who established their liens notwithstanding opposition on novel bases (CL 1948, §§ 570.12, 570.21).

6. Same—Federal Tax Liens—Period of Redemption.

Provision of Federal statutes according to the United States a 1-year period within which to redeem from sale of realty to discharge liens and encumbrances prior to that of the United States applies to State proceedings to foreclose mortgages on property against which Federal tax liens had been filed, hence, lower court was in error in allowing a 6-month period instead of 1 year therefor (28 USC, § 2410).

7. United States—Consent to Suit in Civil Action—Foreclosure —Redemption.

A condition of the statutory consent of the United States to be sued in a civil action in any State court for foreclosure of a mortgage or other lien upon real or personal property is that the government may assert its right of redemption from the sale within 1 year from the date of the lien foreclosure sale (28 USC, § 2410).

8. Courts—Jurisdiction—Foreclosure of Mortgages—Tax Liens —Mechanics' Liens—Priority.

The concurrent jurisdiction of the State circuit court was established to adjudicate the issues involved in suit to foreclose construction loan mortgages against property and to determine priority of tax liens of the United States and mechanics' liens of parties who supplied labor and materials, where suit to foreclose was commenced before petition for involuntary bankruptcy of mortgagors was filed (26 USC, §§ 6321–6323; 28 USC, § 2410; CLS 1956, § 570.1; CL 1948, §§ 570.4, 570.9).

9. Mechanics' Liens—Notes—Filing of Claim.

The mere acceptance of notes by a materialman as evidence of the debt, which notes were not due within the time for filing liens, did not prevent the lien from attaching when the claim was duly filed by the materialman (CLS 1956, § 570.1).

10. Bills and Notes—Blank Indorsement.

The payee of a note who indorses it in blank agrees to pay the note if the maker does not do so.

11. Mechanics' Liens—Claim of Lien—Indorsement of Note.
    Materialman, as payee of note given by owner, does not lose the
    right to file a claim of lien under the mechanics' lien law by
    negotiation of the note to another, where the payee remains
    liable on the note as an indorser (CLS 1956, § 570.1).

12. Bills and Notes—Blank Indorsement—Liens.
    The payee of a note does not cease to become a party to the
    contract to make payment thereof, when he indorses it in blank,
    so as to waive any liens which accompany the note.

13. Mortgages—Foreclosure Sale—Tax Liens—Mechanics' Liens
    —Order of Distribution.
    Proceeds of foreclosure sale of mortgaged properties against which
    United States tax liens and mechanics' liens had been filed
    are ordered paid (1) to the mortgagees in order of priority,
    (2) to the United States tax liens, prorated to respective lots,
    (3) to mechanics' liens, any deficiency to be made up from
    mortgagees in reverse order of priority, (4) to restore such
    deficiency to mortgagees, and (5) to the owners (26 USC,
    §§ 6321–6323; CLS 1956, § 570.1; CL 1948, §§ 570.4, 570.9).

14. Costs—Mechanics' Liens—Mortgage Forclosure Sale—Pri-
    orities.
    Costs are ordered paid mechanics' lien claimants against prop-
    erties foreclosed under later recorded mortgages, where mort-
    gagees sought full priority over all lien claimants on appeal,
    although result subordinated mechanics' liens to tax liens and
    required mortgagees to pay mechanics' liens (26 USC, §§
    6321–6323; CLS 1956, § 570.1; CL 1948, §§ 570.4, 570.9).

Appeal from St. Clair; Streeter (Halford I.), J.
Submitted October 8, 1959.   (Docket Nos. 32–35,
Calendar Nos. 47,882–47,885.)   Decided February
26, 1960.

Bills to foreclose mortgages, instituted by River
Rouge Savings Bank, a Michigan banking corpora-
tion, against S & M Building Company, a Michigan
corporation, and its 3 subsidiary corporations, Vic-
tor Building Company, Gilbert Construction Com-
pany, and LeBlanc Construction Company, and
against subsequent mortgagees and other parties

claiming liens. Default entered against principal mortgagor defendants, then in bankruptcy.

Defendants Kerr Lumber Company and Raymond Excavating Company, both Michigan corporations, filed cross bills claiming priority of mechanics' liens. The United States of America, as party defendant, asserted claim of priority for tax liens.

Four cases, with varying factual issues affecting mortgage and other lien priorities, consolidated for trial and appeal.

Decrees for plaintiff determining its and other mortgagees' security subordinate to mechanics' liens, determining government tax liens subordinate to both, and granting United States limited 6-month period for redemption. Plaintiff appeals, claiming full priority. Defendants Kerr Lumber Company and Raymond Excavating Company cross-appeal claiming allowance for costs. United States of America cross-appeals claiming tax priority. Affirmed in part. Reversed in part to grant priority to mortgagees subject to payment of deficiency on mechanics' liens, with tax liens having priority over mechanics' liens, specified costs allowed successful mechanics' lien claimants, and redemption period of 1 year granted United States.

*Kenneth J. Logan,* for plaintiff.

*Covington, Davidson & Osborn,* for defendant Kerr Lumber Company.

*Said M. Touma,* for defendant Raymond Excavating Company.

*Charles K. Rice,* Assistant United States Attorney General, *Lee A. Jackson, A. F. Prescott* and *Fred*

*E. Youngman,* Attorneys, Department of Justice, *Fredcrick W. Kaess,* United States District Attorney, and *Elmer L. Pfeifle, Jr.,* Assistant United States District Attorney, for defendant United States of America.

KAVANAGH, J.   Sometime prior to 1956 the S & M Building Company, a Michigan corporation, was organized to engage in certain residential building projects.   This company in connection with certain other building or construction companies, namely, Victor Building Company, Gilbert Contruction Company, and LeBlanc Construction Company—which were directly controlled and entirely owned by S & M Building Company—commenced a residential building project embracing some 75 homes in the city of Marysville, Michigan.

The appellees, Raymond Excavating Company and Kerr Lumber Company, were retained by the building companies, the former for excavating work and the latter for furnishing lumber and other construction materials.

As construction progressed on the residences, construction loans were obtained by the building companies from plaintiff River Rouge Savings Bank. These loans were evidenced by promissory notes secured by mortgage indentures, which were recorded by plaintiff mortgagee.   Subsequently, default was made by the building companies in the payment of principal and interest on each of the promissory notes secured by the real-estate mortgages.   Upon default, plaintiff commenced its several actions in the St. Clair county circuit court for foreclosure of its mortgage security.

At this time title searches disclosed the presence of second and third mortgages, mechanics' lien claims, and government tax liens.   Therefore, plain-

tiff joined all such lien claimants as parties defendant in its bill of complaint.

Subsequently, both Kerr Lumber Company and Raymond Excavating Company filed cross bills to foreclose their respective mechanics' liens. Cross bills were also filed by the second mortgagees to foreclose their mortgage liens.

Prior to the time plaintiff filed its bill of complaint, and beginning in February, 1957, the United States government, through its district director of internal revenue, assessed sums against the S & M Building Company for withholding taxes and filed liens for such amounts. Upon demand for payment of the assessed taxes, the taxpayer, S & M Building Company, neglected and refused to pay the same or any part thereof.

On February 14, 1958, after plaintiff had filed its bill of complaint in the St. Clair county circuit court, the S & M Building Company and the other corporations under its control were named in a petition in involuntary bankruptcy, filed in the United States district court for the eastern district of Michigan, southern division. On February 28, 1958, a receiver in bankruptcy was duly appointed. The United States district court issued an order temporarily restraining plaintiff and cross plaintiffs from further proceedings in the circuit court. However, upon objections, the concurrent jurisdiction of the circuit court was recognized and the restraining order vacated. The parties were then permitted to proceed with the foreclosure of their respective liens in the circuit court.

The decision and decree of the lower court granted a priority to the mechanics' liens of Kerr Lumber Company and Raymond Excavating Company over the first mortgage lien of plaintiff, River Rouge Savings Bank. The court also ruled the government tax liens were subordinate to the mechanics' liens

and the first and second mortgage liens, and further that the government was only entitled to a 6-month period of redemption. Regarding attorney fees and costs, the court felt the issues raised presented legal questions not covered by Michigan precedent and, therefore, denied costs to all parties.

River Rouge Savings Bank has appealed, claiming the mechanics' liens claimed by Kerr Lumber Company and Raymond Excavating Company are invalid and, therefore, not entitled to priority over its first mortgage lien. The bank seeks confirmation of all other provisions of the lower court decree.

Both Kerr Lumber Company and Raymond Excavating Company have filed cross appeals claiming they are entitled to costs and allowances for reasonable attorney fees under applicable statutory provisions (CL 1948, §§ 570.12, 570.21 [Stat Ann 1953 Rev §§ 26.292, 26.301]). The cross appellants also claim the decree as to the claim of the United States should be reversed to allow the government tax liens to be prorated over the 19 lots in case No. 71–36* and accorded priority after the amount of the mortgages only and ahead of their respective mechanics' liens. The cross appellants seek affirmance of all other parts of the circuit court decree.

The United States has appealed, asking the decree of foreclosure, to the extent it awards priority to mechanics' liens over the United States tax liens, be vacated and remanded to circuit court with directions to award priority to the tax liens over the mechanics' liens. The United States further seeks correction of the decree to allow it 1 year from date of sale within which to redeem the mortgaged property.

---

* This case number refers to the one in which S & M Building Company was the principal defendant. Because this case was typical and because it contained elements pertaining to all of the issues, its pleadings were submitted on appeal. Hence, references to the case, bill of complaint, decree, et cetera, are in the singular.—REPORTER.

On this appeal River Rouge Savings Bank claims the Raymond Excavating Company does not have a valid mechanics' lien because of failure by the company to make service of the sworn statement of contractor upon the building corporation owners as part of the statutory[*] precondition to the filing of a valid mechanics' lien. The company conceded no sworn statement had been personally served upon the owners, because the company was unable to find the owners or their agents in the county after having made sufficient and repeated efforts to do so, thus fully complying with the statute. Testimony was introduced by the company which would tend to show the company had in fact, on repeated occasions, attempted to discover and serve such statement of contractor upon the owners in the county, but that all such attempts were fruitless, since neither the owners nor their agents could be found.

River Rouge Savings Bank contends the Kerr Lumber Company is not entitled to a valid mechanics' lien because of the negotiation by the lumber company of the notes received by it from the various building corporation owners in amounts representing the materials furnished by the company to the owners. None of these notes was due within the time for Kerr Lumber Company to file claims of lien.[†]    These notes were indorsed by the lumber company by blank indorsement and delivered to the Port Huron branch of the Michigan National Bank, at which time the company received cash or credit to its bank account for the value of the notes from the bank. While these notes were outstanding and while they were discounted at the Michigan National Bank, Kerr Lumber Company filed its claims of lien, notice of intention and sworn

_____

[*] CL 1948, § 570.4 (Stat Ann 1953 Rev § 26.284).
[†] See CLS 1956, § 570.1 (Stat Ann 1957 Cum Supp § 26.281).— Reporter.

contractor's affidavit having been duly served. All statutory steps to perfect its liens were properly taken by the company. Some of the lots for which liens were originally served were in time paid off, and waivers of lien were given by the company. However, no lien was discharged until the company had been paid in cash.

All the owner-builders' notes to Kerr Lumber Company, or their renewals, were past due and charged back to the company by the Michigan National Bank, and were in the company's possession prior to its filing its cross bills of foreclosure. All outstanding notes were tendered by the company to the court at the trial for cancellation upon receiving payment from the sale. If valid, there is no question that the Kerr Lumber Company mechanics' liens have priority over all mortgages in this case, since construction began before any mortgages were given or recorded (CL 1948, § 570.9 [Stat Ann 1953 Rev § 26.289]). The same is true as to the mechanics' liens of Raymond Excavating Company.

The appeal of the United States is based upon error claimed in the decree of the circuit court relative to the priority given the government tax liens. The lower court subordinated the tax liens to the mechanics' liens of Kerr Lumber Company and Raymond Excavating Company.

The Federal tax liens involved in this case arose under sections 6321, 6322, and 6323 of the internal revenue code of 1954.* Section 6321 provides that if any person liable to pay any tax neglects or refuses to pay such tax after demand, the amount, including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto, shall be a lien in favor of the United States upon all property and

---

* 26 USC, §§ 6321–6323.—Reporter.

rights to property, whether real or personal, belonging to such taxpayer. Section 6322 provides that unless another date is specifically fixed by law, the lien imposed by the above section shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time. Section 6323 provides, so far as material here, that the lien in favor of the United States imposed by section 6321 "shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed" as provided in subsection (a) thereof.

In this case, the district director of internal revenue assessed withholding and excise taxes against the S & M Building Company in February, May, and September of 1957, which dates were subsequent to the execution and recording of the first and second mortgages on properties of S & M Building Company. The United States does not contend its lien claims are superior to the claims of the mortgagees being secured by prior recorded mortgages.

The respective mechanics' liens, which were granted priority ahead of the government tax liens, arose, and notices of intent and statements of claim of lien were duly recorded prior to the dates on which the Federal tax liens arose and were recorded.

The Federal tax lien provided by the above sections of the 1954 internal revenue code, attaching as it does to all property and rights to property of the taxpayer as of the date of assessment, is valid against all subsequent claims or liens asserted against the taxpayer's property, except it is not valid as against any "mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed" as therein provided. The mechanics' lien claimants are not "mortgagees," "pledgees," "purchasers," or

"judgment creditors" within the meaning of section 6323 of the 1954 code.

The mechanics' liens asserted by Kerr Lumber Company and Raymond Excavating Company were not choate, perfected liens at the time the Federal tax liens arose and were recorded. Upon this appeal, neither of the above mechanics' lien claimants assert any priority of their liens above those of the United States. In fact, both Kerr Lumber Company and Raymond Excavating Company admit the superiority of the government tax liens and ask reversal of the circuit court decree to the extent it awarded priority to their mechanics' liens over the tax liens.

Although the River Rouge Savings Bank does not deny the right of priority claimed by the United States over the mechanics' liens, the bank says the issue is now moot because of events subsequent to the circuit court decree. The United States contends the subsequent events involving orders of the bankruptcy referee do not moot the issues raised by the government, since the tax liens can only be extinguished by satisfaction of the assessed tax liability and the referee's orders failed either to determine or satisfy such liability.

The issue on appeal concerning Raymond Excavating Company involves the failure of the company, a contractor, to serve a sworn statement of contractor upon the owners prior to filing its affidavit and statement of lien. The applicable section of the mechanics' lien statute governing such service is CL 1948, § 570.4 (Stat Ann 1953 Rev § 26.284), which sets forth the requirements for delivering such sworn statement to the owner and provides penalties for failure to furnish such statement upon demand by the owner. The section further provides as follow:

"If neither such owner, part owner, lessee, nor his agent can be found within the county, then it shall not be necessary for the contractor to make and deliver such statement as a prerequisite to the institution of proceedings under this act, or other suit or proceeding."

The lower court found as a matter of fact that from the testimony it appeared the Raymond Excavating Company's official did endeavor to locate the owner in the county for the purpose of serving the sworn statement of contractor, and that his inability to do so did not deprive the company of a valid lien. While it is true the company, being unable to find the owners or their agents in the county, caused sworn statements to be mailed to the owners by registered mail, the return receipts indicating they had been received by the owners on the day following the filing of the statement and claim of lien, the lower court felt it was unnecessary to determine whether such actual notice alone would be sufficient.

From a review of the testimony it would appear the lower court properly determined a sufficient attempt had been made to locate the owners or their agents in the county. However, it would also seem that upon the receipt by the owners of the actual notice by registered mail, the lien would then attach even though such statement was not provided prior to filing the affidavit of lien. The statute, CL 1948, § 570-.4 (Stat Ann 1953 Rev § 26.284), says that "until the statement provided for in this section is made, in manner and form as herein provided, the contractor shall have no right of action or lien against the owner, part owner, or lessee on account of such contract." In *Holliday* v. *Mathewson*, 146 Mich 336, the Court held that delay in serving upon the owner or his agents the statement required by statute until after the claim of lien had been filed was not fatal to the mechanics' lien where the statement is served

before the time to file a lien expires.   The Court held the lien would not become effective until the statement was served.   The Court said (p 338):

"We are of the opinion that the delay in serving the statement is not fatal to the lien.   No lien attached by the filing of the claim, but when the statement was served the claim became effective.   It is unimportant that the statement was served after the claim was filed.   Both were done within the statutory period, and a lien was perfected on July 3d by the service of the statement.   There is nothing in the various cases cited inconsistent with this holding."

It would appear that in the case at bar the lien of the Raymond Excavating Company would have become valid at the time the owner actually received the statement of contractor and the fact such statement was not received until after the affidavit of lien had been filed would be inconsequential, since the lien would receive validity upon receipt of the statement, both accomplished within the statutory period for filing liens.

On the question of the right to costs and reasonable attorney fees of cross appellants Kerr Lumber Company and Raymond Excavating Company, the lower court felt the issues involved in this litigation were without precedent in Michigan, especially insofar as the issue involving the Kerr Lumber Company notes was concerned.   Basing his opinion in this regard on the novelty of the legal questions involved, the court denied costs to either party.   It is conceded that under the statutes (CL 1948, §§ 570.12, 570.21 [Stat Ann 1953 Rev §§ 26.292, 26.301]), the award of costs and attorney fees is discretionary.   However, Kerr Lumber Company and Raymond Excavating Company claim the court abused its discretion, since they felt the issues were not without precedent.   The cross appellants say the grounds for denial of costs and attorney fees are inequitable,

since in effect all prevailing materialmen could be so barred in any litigation if those opposing the liens could discover any issue not precisely covered by past Michigan law. The case of *Wisniewski* v. *Nawrocki,* 153 Mich 523, held that although the applicable statutory provisions confide the question of costs and attorney fees in mechanics' lien cases to the court's discretion, the complainant in a bill to enforce a lien, on establishing his right to a decree, should be allowed his actual disbursements and a reasonable amount for his attorney. It would appear that under the authority of the *Wisniewski* decision, the lower court should have awarded reasonable costs and attorney fees. Especially is this true in regard to the claim of the Raymond Excavating Company. Furthermore, it seems that although there is no Michigan authority directly in point on the issue of negotiation of the Kerr Lumber Company notes and the effect of such negotiation on the right to file mechanics' liens, there exists sufficient outside authority to decide that particular issue. Since no other reason was advanced by the lower court for its denial of costs and attorney fees than the question of novelty, and since this reason appears without actual merit, an award for costs and reasonable attorney fees should be awarded to Kerr Lumber Company and Raymond Excavating Company as prevailing parties.

On the issue whether the United States is entitled to a 6-month or 1-year period for redemption, it appears the lower court was wrong in merely allowing the shorter period. It is clear the United States was made a party to this State court mortgage foreclosure proceeding pursuant to 28 USC § 2410. Section 2410 subd (c) reads in part as follows:

"A judicial sale in such action or suit shall have the same effect respecting the discharge of the property from liens and encumbrances held by the United

States as may be provided with respect to such matters by the local law of the place where the property is situated. \* \* \* Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have 1 year from the date of sale within which to redeem."

Direct authority against the decree of the lower court granting merely a 6-month redemption period is the case of *United States* v. *Bank of America National Trust & Savings Association* (CCA 9), 265 F2d 862. The court held that compliance with the subsection of the statute requiring a judicial proceeding in which the government may assert its lien, and its right of redemption within 1 year from the date of a lien foreclosure sale, is a condition of the government's consent to be sued in a civil action in any State court for foreclosure of a mortgage or other lien upon realty or personalty on which the United States has or claims a mortgage or other lien. The court said (p 868):

"In our opinion a compliance with subsection '(c)' is a condition of the government's consent to be sued under section 2410. Subsection (c) requires (1) a judicial proceeding in which the government may assert its lien; and (2) the right of redemption within 1 year from the date of sale. Many States do not provide any period of redemption, so that regardless of the method of foreclosure, the government often has a right not available to private lienholders. This is an express condition of the government's consent to be sued."

On petition for rehearing, the court wrote as follows (p 869):

"In enacting section 2410, congress did more than simply provide for waiver of immunity from suit. It imposed a condition for divestiture of the property rights of the United States, *i.e.*, a period of redemption from the foreclosure sale. If section 2410(c) is

limited to foreclosure by action, followed by a judicial sale, then a government lien could be extinguished, without notice and without right of redemption, where the mortgagee proceeded under a power of sale; whereas, in foreclosure by action, the government would have a right of redemption, regardless of State law,—a wholly illogical result in those States, for example, which do not provide any right of redemption. In our opinion, a compliance with subsection (c) is a condition of the government's consent to be sued in any foreclosure under section 2410. This requires a judicial proceeding in which the government may assert its lien and the right of redemption within 1 year from the date of sale."

The United States says it does not have any present intention of exercising its right to redemption in this case, but has appealed this part of the circuit court's foreclosure decree to escape any contention that by failing to appeal from that part of the decree the United States had waived its 1-year right of redemption. Thus, the United States wishes the decree to be corrected to allow the United States 1 year from the date of sale within which to redeem the mortgaged property.

On the issue of priority of the tax liens of the United States, it is clear the finding and decree of the circuit court is erroneous and must be corrected. The United States claims that Federal tax liens arising under sections 6321 and 6322 of the 1954 internal revenue code, notices of which were duly filed in accordance with section 6323, subd (a) of the 1954 code, are entitled to priority in payment of proceeds derived from a foreclosure sale of mortgaged property of the delinquent taxpayer ahead of earlier unperfected mechanics' liens asserted under Michigan law against such property. It is to be noted that both of the mechanics' lien claimants—Kerr Lumber Company and Raymond Excavating Company—

agree with the position of the United States and admit that such government tax liens are superior to and entitled to priority ahead of their respective mechanics' liens. Even the River Rouge Savings Bank fails to deny the priority of the United States' lien, but claims the issue is moot because of events subsequent to the circuit court's decree whereby proceedings before a referee in bankruptcy in Federal court have in effect dissolved any lien held by the United States. The United States disputes this claim, pointing out the following facts: An involuntary petition in bankruptcy was filed against the owner-taxpayer in Federal district court subsequent to the time this action was begun in circuit court. The concurrent jurisdiction of the latter court to adjudicate the issues here involved was established. The circuit court established valid liens for unpaid taxes in favor of the United States against the S & M Building Company, the principal corporation which entirely owned and controlled all the construction or building firms against which claims were being pressed. The validity of such Federal tax liens is not in issue. The government admits the tax liens are inferior to the River Rouge Savings Bank mortgage liens but since, under Michigan law, the mechanics' liens of Raymond Excavating Company and Kerr Lumber Company take priority over the bank's mortgage liens in the situation involved in this case, and the circuit court so found, the government contends its tax liens are in effect entitled to priority over the mortgage liens as, under Federal law, the tax liens are superior to the mechanics' liens. The United States says the issue of priority of its tax liens was not determined by the bankruptcy referee, and thus neither this issue nor the one involving the period of redemption are rendered moot by the action of the referee. The United States alleges that under the applicable sections of the internal revenue code

of 1954 the tax lien constitutes a general lien upon all property and rights to property, real or personal, belonging to the delinquent taxpayer, and further that such lien attaches at the time the tax assessments are made and continues until the liability for the assessed amount is satisfied or becomes unenforceable through lapse of time. The United States says the referee's orders do not constitute a satisfaction of the tax liability and that the referee failed to have full jurisdiction over all the property of the delinquent taxpayer.

It would appear the order of the referee failed to resolve the issue of priority or the validity or amount of the government liens. The referee's order merely said that with sale of the property of S & M Building Company (for $37,500) the liens, if any, of the Federal government and the State of Michigan are transferred to such proceeds and are assumed by the offerors. The referee's order, therefore, does not moot the issues involved in this appeal by the Federal government as it would seem the issues of priority and period of redemption should be decided. The question of priority of the Federal tax liens over the earlier unperfected mechanics' liens of Kerr Lumber Company and Raymond Excavating Company is fully answered by *United States* v. *Security Trust & Savings Bank,* 340 US 47 (71 S Ct 111, 95 L ed 53), and other cases in footnote.[*]

---

[*] *United States* v. *Gilbert Associates,* 345 US 361 (73 S Ct 701, 97 L ed 1071), reversing 97 NH 411 (90 A2d 499); *United States* v. *City of New Britain,* 347 US 81 (74 S Ct 367, 98 L ed 520), reversing *Brown* v. *General Laundry Service, Inc.,* 139 Conn 363 (94 A2d 10); *United States* v. *Acri,* 348 US 211 (75 S Ct 239, 99 L ed 264), reversing (CCA6), 209 F2d 258; *United States* v. *Liverpool & London Insurance Co.,* 348 US 215 (75 S Ct 247, 99 L ed 268), reversing (CCA5), 209 F2d 684; *United States* v. *Scovil,* 348 US 218 (75 S Ct 244, 99 L ed 271), reversing 224 SC 233 (78 SE2d 277); *United States* v. *Colotta,* 350 US 808 (76 S Ct 82, 100 L ed 725), reversing, *per curiam,* 224 Miss 33 (79 S2d 474); *United States* v. *White Bear Brewing Co., Inc.,* 350 US 1010 (76 S Ct 646, 100 L ed 871), reversing , *per curiam* (CCA7), 227 F2d 359; *United States* v. *Vorreiter,* 355 US 15 (78 S Ct 19, 2 L ed 2d 23), reversing, *per*

Neither the mortgagee, River Rouge Savings Bank, nor the mechanics' lien holders, Kerr Lumber Company and Raymond Excavating Company, dispute the priority of the Federal tax liens over the mechanics' liens.

On the issue of the validity of the mechanics' lien of Kerr Lumber Company, the question as framed by appellee Kerr Lumber Company seems preferable to that of appellant bank. Thus the lumber company asks: Where a materialman accepts notes from the owners as evidence of debt for material furnished in construction, which notes were not due within the time for filing statement and claim of mechanics' liens, and which notes were discounted by blank indorsement to a bank prior to the materialman's filing such claim of lien, but which notes and renewals thereof were past due and in materialman's possession prior to its filing bills of foreclosure, has a waiver of the materialman's lien right occurred? No Michigan decision appears to be directly in answer to this issue; however, there are Michigan decisions involving other than mechanics' liens which are somewhat analogous to the facts of this case.

It is clear the mere acceptance of the notes by Kerr Lumber Company as evidence of the debt, which notes were not due within the time for filing the liens, did not prevent the lien from attaching when the claim was duly filed by the Kerr Lumber Company. The cases of *Marquette Lumber Co.* v. *Albee,* 196 Mich 127, *Smalley* v. *Ashland Brown-Stone Co.,* 114 Mich 104, and *Knowlton* v. *Gibbons,* 210 Mich 547, may be cited in support of this statement.

On the issue of whether the discounting of the notes at a bank by Kerr Lumber Company consti-

*curiam,* 134 Colo 543 (307 P2d 475); *United States* v. *Hulley,* 358 US 66 (79 S Ct 117, 3 L ed 2d 106), reversing, *per curiam,* (Fla) 102 S2d 599.

tuted a waiver of its lien rights where the notes were due and back in the claimant's possession prior to enforcing its liens by foreclosure, we must rely on authority from jurisdictions other than Michigan, since there seems to be no Michigan decision directly on this issue involving mechanics' liens.

The following general rule is stated in 57 CJS, Mechanics' Liens, § 226, p 800:

"The transfer or negotiation of notes taken by claimant does not defeat his right to a lien, at least where the note is indorsed back to, or taken up by, claimant so that it is in his possession and control at the commencement of the suit and he surrenders it in court at the hearing."

To the same effect, see 18 RCL, Mechanics' Liens, § 113, p 970, and 65 ALR 294, the latter saying as follows:

"The general rule as to the effect of the claimant's negotiating a note accepted by him from the owner or the contractor seems to be that such negotiation, of itself, will not constitute a waiver of the right to enforce a mechanics' lien."

In *Hill* v. *Alliance Building Co.*, 6 SD 160 (60 NW 752), it was held a materialman who liquidates the amount of his claim by taking the owner's note and transfers it to another by his blank indorsement, thus binding him to pay the note if the maker fails, still retains an interest in the note which entitles him to file a valid mechanics' lien within the statutory period in his own name. The court there said (pp 171, 172):

"In our opinion, the filing of the lien within the statutory time limit, by the parties for the benefit of whom the lien was created, and at a time when their interests required the full protection of the law enacted for their benefit, was a substantial compliance with the requirements of the statute as to

notice; and the fact that the note had been, a few days prior thereto, conditionally disposed of, or transferred by an indorsement binding them to pay if the debtor failed, is of no concern to the owner of the property charged with the lien, or to his successors or assigns. The transfer of the note did not relieve Fraser & Shepherd from paying W. S. Hill & Co. for the material by which the value of the premises in controversy was largely created, as they were liable upon their indorsement if the maker failed to pay the note at maturity. Neither did such transfer release the Alliance Building Company from liability to Fraser & Shepherd upon the original contract, so long as the note remained unpaid; and to say that a materialman, in a case like the present, by assigning his claim, waives his rights, and is precluded from filing an available lien for the protection of himself and his assignee, would be to hold that our mechanics' lien law is not sufficient to provide effectual security to those who, by their labor, skill, and material, have created or enhanced the value of the property, which ought to stand as security until the debt is paid. There are no good reasons for saying that the lien is lost, or that it cannot be enforced by an assignee who has brought the note into court, and offered the same for cancellation. We therefore hold that the negotiation of the note neither defeated nor suspended the right of the claimants and payees therein named to file their lien, and make it available to their assignee or themselves in case they had been called upon to take up the note and enforce the collection of their claim against the Alliance Building Company."

Another case in support of the proposition that a mechanics' lien holder retains such interest in the note after negotiation to enforce a lien is *German Bank* v. *Schloth,* 59 Iowa 316 (13 NW 314). In the *German Bank Case* the court stated (pp 322, 323):

"Can the lien holder, the payee of the note, after he has received the note from the indorsee, enforce

the lien? We think he can, for these reasons. He at no time was without interest in the note. He was responsible while it was in the hands of the indorsee as an indorser and that responsibility was accompanied by the liability of the maker to him. The contract of the indorser and maker run together. The indorser agrees to pay, if the maker does not; and the maker is bound to the indorser if he fails to pay the indorsee. These are subsisting contracts while the paper is in the hands of the indorsee. Like all other contracts they are only enforceable by action upon default by the parties bound. The maker all the time the note is in the hands of the indorsee is bound by this contract to the payee. We conclude therefore that the payee does not cease to become a party to the contract so as to waive any liens which accompany the note."

In the case of *Standard Oil Company* v. *Sowden,* 55 Ohio St 332 (45 NE 320), a fact situation similar to that in the case at bar was presented. In that case the contractors, upon completion of certain oil tanks in an oil company refinery, took 3 notes from the owner for the balance due. These notes were then indorsed and sold to a bank. Within 4 months after completion of the structure and while the bank was the owner and holder of the notes, the contractors made and filed an affidavit in due form for perfecting a mechanics' lien to secure the indebtedness for erecting the structure. The court held the contractors had a valid mechanics' lien.

In *McLean* v. *Wiley,* 176 Mass 233 (57 NE 347), the mechanics' lien claimant received notes under an agreement that they were not taken in payment of the debt. When the claimant filed his statement of lien some of the notes were in the hands of third parties; however, they were taken up by the claimant before enforcement proceedings were begun. The supreme judicial court of Massachusetts, speaking through

Chief Justice Holmes, held the trial judge properly refused to rule that the claimant could not maintain a lien for the portion of the account included in the outstanding notes. See, also, *National Surety Company* v. *Price,* 162 Ky 632 (172 SW 1072).

While Michigan has not ruled on the effect of negotiation of notes prior to filing claim of lien in cases involving mechanics' liens, there have been rulings involving common-law sawyers' liens and statutory watercraft liens.

In *McEwan Bros. & Co.* v. *Carpenter,* 111 Mich 522, the Court held that evidence the owner of logs gave his notes for the saw bill and that the sawyers discounted the notes, and protected them in the hands of the holders by collateral security, is insufficient of itself to establish a waiver of the lien for sawing.

In the case of *Sarmiento* v. *The Catherine C.,* 110 Mich 120, the mechanics' lien claimant had a contract with defendant for certain labor on a boat. The contract provided for periodic payments as the work progressed. Defendant sent the claimant a first payment note, which the claimant credited on defendant's account. The note was renewed when it matured and both the original and renewal notes were. discounted by the claimant. Subsequently, claimant filed his complaint seeking a lien. The note was not redeemed by claimant until before judgment. Defendant contended claimant's acts constituted a waiver of the lien, but the court rejected this contention.

In the instant case it is apparent that no waiver of the lien on the part of Kerr Lumber Company existed either by agreement or by taking the notes. This procedure is a very usual one and necessary to carrying on everyday business relationships. Contractors need credit; so do suppliers. In order to supply construction materials suppliers have to purchase these materials. They are able to do this in

the ordinary business world by discounting notes obtained from purchasers, providing the necessary life blood to permit the carrying on of our complex business system. They are required to pay them in the event the maker defaults. Certainly, it was the intent of the legislature under the mechanics' lien law to permit them to file the statement so that they might protect themselves in the event of the maker's default. Default did occur in this case. Kerr Lumber Company, lien claimant, was required to pay the notes at the bank and had them available in court for discharge in the event payment was tendered. More they could not and should not be required to do. If our law was otherwise, business and credit under these circumstances would come to a complete standstill. An interpretation that would permit this to happen cannot be read into the mechanics' lien law.

On the question of the proper distribution procedure herein involved, the case of *Samms* v. *Chicago Title & Trust Co.*, 349 Ill App 413 (111 NE2d 172), seems pertinent. In that case the court said (p 422):

"It is our conclusion that the claim of the mechanics' lien holder in this case is not within the meaning of section 3672 and is subordinate to the lien of the government's tax claim. This priority of the government's lien, if only the mechanics' lien were here involved, would be full and complete as to all proceeds derived from the sale of the property resorted to. However, where, as in this case, there is a mortgage which is a lien prior to that of the government's tax claim, then the government for satisfaction of its lien can only resort to those proceeds from the sale of the property which are in excess of the mortgage indebtedness. Therefore, the priority of the government's lien in the instant case is only as to that excess. The mechanics' lien claimant by State law is given a lien prior to that of the mortgagee, which in effect means that it may resort to the pro-

ceeds from the sale of the property which are applicable to payment of the mortgage indebtedness. This is the inevitable result of the application of the act of congress and of the State law."

Thus the decree, paragraph 30, should provide that the sale proceeds after expenses of sale be paid in the following order:

(1) To the mortgagees, in order of their priority.

(2) To the United States tax liens, prorated to respective lots of case 71–36.

(3) To the mechanics' liens, but if proceeds be insufficient to pay them, the deficiency to be made up from the mortgagees, in reverse order of the mortgagees' priority.

(4) To restore to the mortgagees any such deficiency paid to mechanics' liens.

(5) To the owners.

This procedure accords to all parties the priorities to which they are entitled. If, as a matter of fact, the proceeds are insufficient to pay all liens, resulting in the United States being in part paid ahead of the mortgagees, such situation results from the paramount United States law under which the mortgagees claim their priority over United States tax liens, in time of recording. This priority is thus qualified by the same United States law to the extent its lien displaces mechanics' liens prior to mortgages under local law.

On the other hand, the State law of Michigan accords mechanics' liens priority over mortgages recorded after construction was begun, as in the instant case.

Therefore, as to the appeal of the appellant bank, the decree sustaining the validity and amount of the mechanics' liens of Kerr Lumber Company and Raymond Excavating Company, and the priority of such liens over the mortgages, is affirmed.

As to the cross appeal of Kerr Lumber Company and Raymond Excavating Company, the decree is reversed as to disallowance of costs and attorney fees and modified to award to such cross appellants their actual filing and recording fees, taxable court costs, and reasonable attorney fees in the lower court, to be determined by the lower court.

As to the appeal of the United States, the decree is reversed to allow priority to such tax liens after the amount of the mortgages only and ahead of the mechanics' liens, and the United States is entitled to a period of 1 year from the date of sale within which to redeem the mortgaged property.

Cross appellants Kerr Lumber Company and Raymond Excavating Company shall have costs of this Court.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, and EDWARDS, JJ., concurred.

SOURIS, J., took no part in the decision of this case.