*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

12FIVE CAPITAL, LLC,

　　　　　　　　Plaintiff-Appellant,

v

AQUAFORM WATERCRAFT, LLC, STEP
SOLUTIONS, LLC, NATHAN GREENWOOD, and
RINO GREENWOOD,

　　　　　　　　Defendants,

and

NORTHSHORE DOCK, LLC,

　　　　　　　　Appellee.

UNPUBLISHED
May 11, 2026
9:15 AM

No. 372896
Leelanau Circuit Court
LC No. 23-011094-CB

Before: KOROBKIN, P.J., and RIORDAN and MARIANI, JJ.

PER CURIAM.

Plaintiff 12five Capital, LLC, appeals as of right the trial court's order establishing liens against certain personal property, and proceeds from its sale, in favor of Northshore Dock, LLC, under the mechanics' lien statute, MCL 570.185 *et seq*. On appeal, plaintiff argues that the trial court reversibly erred by (1) considering an affidavit and accompanying documents submitted by Northshore three days before ruling on the case at a motion hearing, and (2) effectively awarding monetary relief to Northshore notwithstanding that Northshore did not initiate an independent action against plaintiff. We disagree with both arguments and affirm.

## I. BACKGROUND

This is a secured-transactions case primarily involving liens and other security interests against boats and boat parts. The entire procedural and factual background of this case is relatively extended, but for the purposes of this appeal between plaintiff and Northshore, only a brief summary of the procedure and facts is necessary.

-1-

In September 2023, plaintiff filed its complaint against defendants Aquaform Watercraft, LLC, Step Solutions, LLC, Nathan Greenwood, and Rino Greenwood, alleging as follows. Plaintiff is a "financial services firm" that provides financing to its clients, such as Aquaform, allowing its clients "to fund purchases of necessary inventory and supplies needed to fulfill orders." Under the terms of a November 2021 contract between plaintiff and Aquaform, plaintiff provided financing to Aquaform that enabled Aquaform to "manufacture and deliver boats pursuant to customers' orders." The contract provided plaintiff with a "first priority purchase money security interest" in those boats and other related personal property. Apparently, however, Aquaform was unable to fulfill its financial obligations to plaintiff in the subsequent months. Thus, in December 2022, plaintiff served a notice of default on Aquaform, as well as Step Solutions and the Greenwoods, each of whom had guaranteed Aquaform's obligations. The parties were unable to resolve their financial issues, culminating in the instant complaint in which plaintiff sought a total of $3,770,400.52 in contractual damages.

In addition to the complaint, plaintiff filed a motion the same day seeking possession of the collateral at issue pending final judgment. Plaintiff asserted that it had "the right to immediate possession of the Collateral and is entitled to recover the Collateral and to sell the Collateral and apply the proceeds to Aquaform's indebtedness pursuant to the [contract], the Uniform Commercial Code and applicable state law, including MCL 440.9609 . . . ."

In October 2023, the trial court entered an order granting plaintiff's motion and providing that Aquaform "and any other individual or entity who may have possession of the Collateral hereinafter described must relinquish possession of the Collateral . . . ."

In December 2023, plaintiff filed a motion to show cause as to why non-party Northshore should not be held in contempt. According to the motion, "Northshore Dock has refused to relinquish possession of Plaintiff's collateral, including but not necessarily limited to, fourteen (14) boats to Plaintiff." Northshore filed a brief in response a few weeks later, asserting that under MCL 570.185, it was entitled to retain possession of 19 boats upon which Northshore has "worked in assembling and otherwise completing for sale into the marketplace." Northshore explained that Michigan caselaw provides that a possessory mechanic's lien has superiority over a Uniform Commercial Code security interest.

Plaintiff and Northshore litigated the matter over several months.[1] Eventually, the trial court scheduled a hearing for August 26, 2024. On August 21, 2024, court staff sent an e-mail to the parties stating as follows:

Good afternoon,

---

[1] It appears that in March 2024, the trial court authorized plaintiff to take possession of, and sell, the collateral in possession of Northshore, subject to Northshore's potential lien against the sale proceeds. Further, while the record is not clear, the parties' post-March 2024 filings imply that Northshore surrendered possession of the collateral to plaintiff, and at least some of that collateral has been sold by plaintiff. Simply put, this case is now primarily about the proceeds from that sale or sales.

Judge Hamlyn has reviewed the recent Motion to Confirm Statutory Lien Rights set for hearing in the above-referenced case next week. Included were a number of invoices to substantiate the numbers submitted. Can you please provide the following:

For invoices 28693, 29564, and 30328, there are a number of purchase orders listed and the product/service is "service labor." Judge Hamlyn doesn't know what this means and cannot do a proper analysis under the statute. Please provide copies of the purchase orders listed in each of those three invoices ASAP, so that he can review them ahead of Monday's hearing. A copy of what is sent should also be filed electronically via MiFILE in the court file.[2]

On August 23, 2024, Northshore submitted to the trial court a nine-page affidavit from its owner, as well as 11 pages of accounting documents, responding to the trial court's inquiry. In essence, the affidavit explained how the trial court should interpret various spreadsheet evidence, and it asserted that "[t]he total amount due including labor, supplies, general overhead and all costs amounted to $**236,810.80**." (Emphasis in original.) Plaintiff does not dispute that it was electronically served this material the same day.

On August 26, 2024, the trial court held the hearing as scheduled. Plaintiff argued that Northshore was seeking a lien for certain costs that were not recoverable under MCL 570.185, such as fuel for shipping. In addition, plaintiff complained that Northshore had provided insufficient documentary support for other aspects of its claimed lien, even in light of its recent affidavit and accompanying documents:

Some of the documents they produced on Friday, those came in after four o'clock on Friday. We've had a chance to do an initial review of those but we have not had a chance to go over those with our client and do a deep review. But our initial review shows it's more of the same. There's no specific information sufficient to show that they are entitled to a lien under the mechanics lien act. . . .

Northshore responded that its evidence was sufficient to support its claimed lien, and it briefly indicated that it would have no objection to a delayed ruling on the matter to allow plaintiff additional time to review its recent documents and file a supplemental brief. At the conclusion of the hearing, the trial court explained that it was prepared to immediately issue a ruling:

Well, we're not going to adjourn for today. The supplemental information was provided at the request of the Court and the Court was able to work on it Sunday and prepare for this hearing and I would expect other folks to be able to do that as well if they needed to.

---

[2] We are unable to locate the e-mail itself in the lower-court record. However, a copy of the e-mail has been provided in Northshore's appellee brief, and plaintiff does not dispute its veracity. In any event, it is beyond dispute that the trial court sent an e-mail to this effect on this date.

The trial court then carefully reviewed several of the invoices and other documentary materials and issued its ruling. Simply put, the trial court ruled that certain claimed costs, such as fuel and transportation, were not subject to a lien under MCL 570.185, but that most of the costs claimed by Northshore were subject to a lien under that statute. The trial court then directed Northshore to prepare an order to that effect.

A couple of weeks later, Northshore submitted a proposed order. In relevant part, the proposed order provided that Northshore is entitled to "a judgment Lien under MCL 570.185 against the Plaintiff 12Five Capital, L.L.C., and the subject watercraft (further identified in paragraph 11 below), in the amount of $**193,309.42**."

Plaintiff filed written objections to the proposed order. Its leading objection was that "[t]he Court did not grant Northshore a 'judgment lien' " because "the statute under which Northshore purports to assert lien rights on the boats at issues [sic] does not allow for a 'judgment lien' against a party." Rather, plaintiff explained, "Northshore could only be entitled to a *mechanic's lien* that attaches to the *boats*. Here, because the boats at issue are no longer in Northshore's possession, the extent of any lien that Northshore could be granted is limited to a lien on the proceeds from the sale or disposition of the boats at issue."[3]

The trial court held a hearing on plaintiff's objections. At that hearing, the trial court agreed with plaintiff that a lien under MCL 570.185 may only attach to the collateral and the proceeds from its sale, not plaintiff itself, so it directed that the proposed order be modified in that regard. The trial court emphasized that "my understanding and reading of this [new] order is this does not give Northshore Dock a blanket lien against 12Five Capital." The trial court observed that plaintiff's remaining objections were either meritless or could be addressed through other procedures. Accordingly, the trial court entered its order the same day omitting the language providing that Northshore was entitled to a lien against plaintiff itself, but otherwise maintaining its ultimate ruling that Northshore was entitled to a lien in the amount of $193,309.42 against the collateral and proceeds from the sale of that collateral.

Plaintiff now appeals, raising two issues.[4] First, plaintiff argues that the trial court erred by considering the affidavit and accompanying documents served by Northshore three days before the dispositive motion hearing, when MCR 2.119(C) requires a seven-day service period for such materials. Plaintiff contends that it "was prejudiced as it did not have access to the affidavit for seven days prior to the motion hearing and this Court must therefore reverse the Circuit Court's order . . . ." Second, plaintiff argues that the trial court erred by "enter[ing] a statutory lien under the Mechanics Lien Act against sale proceeds without any of the process inherent in a standalone civil proceeding." Plaintiff reasons that under MCL 570.188 and MCL 570.189 of the mechanics' lien statute, a mechanic such as Northshore must initiate an independent legal action to obtain a money judgment against a person liable for payment, so it follows that Northshore similarly must

---

[3] Plaintiff raised other fact-specific objections that are not relevant for this appeal.

[4] To the extent that the trial court's order is not a "final order" for the purposes of MCR 7.202(6)(a), we treat plaintiff's claim of appeal as an application for leave to appeal and grant it. See *In re Morton*, 258 Mich App 507, 508 n 2; 671 NW2d 570 (2003).

initiate an independent legal action to obtain a lien against sale proceeds. Northshore responded that the trial court entered a mechanic's lien pursuant to MCL 570.185.

## II. STANDARD OF REVIEW

We review de novo questions of statutory interpretation. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009). "We [also] review de novo . . . the construction, interpretation, and application of the court rules." *Truel v City of Dearborn*, 291 Mich App 125, 131; 804 NW2d 744 (2010) (citations omitted). Further, "trial courts possess the inherent authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," and "[a]n exercise of the court's inherent power may be disturbed only upon a finding that there has been a clear abuse of discretion." *Baynesan v Wayne State Univ*, 316 Mich App 643, 651; 894 NW2d 102 (2016) (cleaned up). "An abuse of discretion occurs when a court chooses an outcome outside the range of principled outcomes." *Id*.

## III. DISCUSSION

## A. AFFIDAVIT

Plaintiff first argues that the trial court erred by considering the affidavit[5] served by Northshore after 4:00 p.m. on August 23, 2024, when the dispositive motion hearing occurred on August 26, 2024. According to plaintiff, three days was insufficient for its counsel to review the affidavit and contrary to MCR 2.119(C), which requires a seven-day service period for such documents absent certain exceptions not implicated here. Plaintiff asserts that this violation of MCR 2.119(C) requires reversal. We disagree.

MCR 2.119(C) provides, in relevant part:

(1) Unless a different period is set by these rules or by the court for good cause, a written motion (other than one that may be heard ex parte), notice of the hearing on the motion, and any supporting brief or affidavits must be served as follows:

(a) at least 9 days before the time set for the hearing, if served by first-class mail, or

(b) at least 7 days before the time set for the hearing, if served by delivery under MCR 2.107(C)(1) or (2) or MCR 1.109(G)(6)(a).[6]

* * *

---

[5] To be precise, plaintiff challenges the trial court's consideration of both the affidavit itself and the accompanying documents. For ease of discussion, we generally refer to "the affidavit."

[6] MCR 2.107(C)(1) and (2), and MCR 1.109(G)(6)(a), concern electronic service.

(3) If the court sets a different time for serving a motion or response its authorization must be endorsed in writing on the face of the notice of hearing or made by separate order.

We acknowledge that MCR 2.119(C)(1)(b) generally contemplates a seven-day service period for affidavits in support of a party's case that are served electronically. That seven-day service period was not satisfied here, nor was the MCR 2.119(C)(3) exception that allows for a shortened service period when that period is "endorsed in writing on the face of the notice of hearing or made by separate order." Thus, although we have recognized that "MCR 2.119(C) . . . indicates that trial courts have discretion to vary from the prescribed filing deadlines," *Norman v Dep't of Trans*, 338 Mich App 141, 151; 979 NW2d 390 (2021), it is arguable that the trial court in this case did not have such discretion under MCR 2.119(C).

On the other hand, as a general proposition, "[a] court has discretion to consider untimely documents." *Flanagin v Kalkaska Co Rd Comm'n*, 319 Mich App 633, 640; 904 NW2d 427 (2017).

In any event, we need not decide whether the trial court erred or abused its discretion by violating MCR 2.119(C). Nor do we need to decide whether the trial court abused its judicial discretion to manage its docket or consider untimely documents, see *Baynesan*, 316 Mich App at 651; *Flanagin*, 319 Mich App at 640, although we are inclined to conclude that what occurred here was a routine and acceptable process that is comfortably within the court's discretion. Even assuming that the trial court erred or abused its discretion by violating MCR 2.119(C) and by acting outside the scope of its overall judicial discretion, reversal is not warranted because any error was harmless. See MCR 2.613(A) ("[A]n error or defect in anything done or omitted by the court or by the parties is not ground . . . for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice."). Plaintiff has not argued or otherwise shown, either below or on appeal, how the outcome of this case might have been different had the affidavit been served in compliance with MCR 2.119(C) or had the trial court otherwise exercised its judicial discretion. For example, plaintiff has not asserted that any information in the affidavit was false, misleading, or incomplete, such that it would have been able to identify those flaws for the trial court if the affidavit was served seven days before the motion hearing as required by MCR 2.119(C)(1)(b). Rather, plaintiff summarily asserts in its reply brief that "[t]he Affidavit introduced new facts and exhibits concerning the nature, scope, and amount of the claimed lien. In a contested, fact-intensive motion, depriving the nonmoving party of time to address late-filed evidence is prejudicial and undermines the adversarial process the rules protect." This naked contention, however, is an insufficient basis for us to conclude that reversal is warranted. Again, plaintiff has not actually disputed the contents of the affidavit or argued that the trial court's ultimate ruling would have been different had plaintiff been given a few extra days to review the affidavit.

Therefore, we affirm the trial court on this issue.

## B. MONETARY RELIEF

Plaintiff next argues that the trial court erred by imposing a statutory lien under MCL 570.185 against proceeds from the sale(s) of the collateral at issue. Plaintiff reasons that "MCL

570.188 and MCL 570.189 require that a lien claimant commence a separate action to recover charges and obtain a money award," and, by imposing a lien against proceeds from the sale(s), the trial court effectively awarded Northshore monetary relief from plaintiff without requiring Northshore to commence a separate action. In other words, plaintiff explains, "a lien that directs proceeds to Northshore is functionally indistinguishable from awarding money relief without a separate action, especially where the secured creditor sells the property and the court orders funds disbursed." We disagree.[7]

MCL 570.185 provides, in relevant part:

> Whenever any person shall deliver to any mechanic, artisan, or tradesman, any materials or articles for the purpose of constructing in whole or in part, or completing any furniture, jewelry, implement, utensil, clothing, or other article of value, . . . such mechanic, artisan, tradesman, or other person shall have a lien thereon for the just value of the labor and skill applied thereto by him, and for any materials which he may have furnished in the construction or completion thereof, . . . and may retain possession of the same until such charges are paid.

MCL 570.188 provides as follows:

> The person having such lien may commence a suit for the recovery of such charges in a court of competent jurisdiction against the person liable for the payment thereof.

Finally, MCL 570.189 provides as follows:

> If such summons be returned personally served upon the defendant, the same proceedings shall thereupon be had, in all respects, as in other suits commenced by summons, in which there is a personal service of process, and judgment shall be rendered in such suit in like manner.

We agree with plaintiff that MCL 570.188 and MCL 570.189 contemplate that the holder of a mechanic's lien generally must commence an independent action, or perhaps may file a cross-claim or counter-claim depending on the nature of the proceedings, to recover "charges." However, Northshore was not required to do so here. The term "charges," as used in MCL 570.188 and considered in context of the surrounding statutes, essentially refers to the amount owed by the person liable for payment to the mechanic. Thus, when the holder of a mechanic's lien initiates a "suit" under MCL 570.188 to recover "charges," the holder essentially is seeking a monetary judgment against the person liable for payment of the amount owed, such that the person would be liable for the amount of that judgment. See generally, *Premiere Prop Servs, Inc v Crater*, 333 Mich App 623, 632; 963 NW2d 430 (2020) (explaining that garnishment against a defendant is one procedure to satisfy a judgment).

---

[7] This issue is waived because it was not raised below. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Nonetheless, for the reasons explained herein, it is meritless.

Here, in contrast, the trial court did not enter judgment against plaintiff on behalf of Northshore. That is, plaintiff is not personally liable to Northshore under the trial court's order. Rather, the trial court imposed a mechanic's lien against the collateral and proceeds from the sale(s) of the collateral, such that Northshore may be entitled to some or all of those proceeds in accordance with that lien. Courts have long recognized that a mechanic's lien may attach to the sale proceeds of collateral that itself is subject to a mechanic's lien. See, e.g., *River Rouge Savings Bank v Victor Bldg Co*, 359 Mich 189, 212-213; 101 NW2d 260 (1960); *Sylvania Savings Bank Co of Sylvania, Ohio v Turner*, 27 Mich App 640, 643-644; 183 NW2d 894 (1970). Indeed, plaintiff's counsel recognized as much during the September 25, 2024 motion hearing, stating that "what Northshore would have at most is a lien against the boats and proceeds from the boats," while "there should not be a judgment in these proceedings against 12Five." Plaintiff's counsel's statement of the law with regard to the scope of the lien under the mechanics' lien statute is accurate, and we affirm the trial court on this issue.

## IV. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Daniel S. Korobkin
/s/ Michael J. Riordan
/s/ Philip P. Mariani

-8-