PNC NATIONAL BANK ASSOCIATION
v DEPARTMENT OF TREASURY

Docket No. 283560. Submitted July 14, 2009, at Lansing. Decided July
23, 2009. Approved for publication September 8, 2009, at 9:10 a.m.

PNC Bank National Association paid single business taxes for three
tax years under protest. It subsequently brought an action in the
Court of Claims against the Department of Treasury, seeking
return of the taxes paid and arguing that the department should
not have included in PNC's tax base interest income from loans
secured by Michigan property or made to Michigan customers
because PNC received the loan payments at a mailing address
outside Michigan. The court, James R. Giddings, J., granted the
department summary disposition, and PNC appealed.

The Court of Appeals *held*:

Under former MCL 208.65(b)(iv) of the now-repealed Single
Business Tax Act, which applied to the transactions at issue in this
case, PNC's tax base in Michigan derived from its gross business in
the state, which included interest it received. The statutory
scheme required that gross business income of whatever kind be
attributed to the state where a taxpayer engaged in the business
activities that resulted in that income. PNC received interest
income as a result of business activities within Michigan. Where
PNC received that interest was irrelevant to the statutory scheme.

Affirmed.

*Dykema Gossett PLLC* (by *Steven E. Grob, Sherill D.
Wolford*, and *Jill M. Wheaton*) for the plaintiff.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*,
Solicitor General, and *Heidi L. Johnson-Mehney*, Assistant Attorney General, for the defendant.

Before: O'Connell, P.J., and Bandstra and Donofrio,
JJ.

PER CURIAM. This case arises from a dispute between plaintiff, PNC Bank National Association, and defendant, Michigan Department of Treasury (DOT), regarding PNC's payment under protest of more than $900,000 in taxes assessed against it for tax years 1997, 1998, and 1999. PNC appeals as of right the final order of Court of Claims denying PNC's motion for summary disposition under MCR 2.116(C)(10) and granting summary disposition to the DOT under MCR 2.116(I)(2), upholding the DOT's tax assessment against PNC. We affirm.

The parties present to us a simple issue that has been made unnecessarily complicated. PNC, a national banking association based in Pittsburgh, Pennsylvania, argues that the DOT should not have assessed the taxes for those tax years. PNC concedes that it earned interest income from loans secured by real property located in Michigan, as well as from unsecured loans provided to Michigan customers. However, PNC claims that because it received payments from these Michigan transactions at a mailing address located outside Michigan, the DOT should not have included the interest it earned on these transactions when calculating PNC's single business tax (SBT). We disagree.

The parties have conceded that former MCL 208.65 is the applicable provision for determining whether the interest payments in question should be included in PNC's tax base under the SBT, and they agree that the question is one of statutory interpretation. We review de novo both a trial court's decision to grant or deny a motion for summary disposition and questions of statutory interpretation. *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003); *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. [*Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001) (citations omitted).]

"Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *In re Smith Estate*, 252 Mich App 120, 124; 651 NW2d 153 (2002).

MCL 208.65 was repealed by 2006 PA 325, effective December 31, 2007. MCL 208.151. However, this provision was in effect during the tax years in issue. MCL 208.65 stated:

The tax base of a financial organization attributable to Michigan sources shall be taken to be:

(a) The entire tax base of a taxpayer whose business activities are confined solely to this state.

(b) In the case of a taxpayer whose business activities are conducted partially within and partially without this state that portion of its tax base as its gross business in this state is to its gross business everywhere during the period covered by its return. Gross business includes the sum of:

(i) Fees, commissions, or other compensation for financial services.

(ii) Gross profits from trading in stocks, bonds, or other securities.

(iii) Interest charged to customers for carrying debit balances of margin accounts, without deduction of any costs incurred in carrying the accounts.

(iv) Interest and dividends received.

> (v) Any other gross income resulting from the operation as a financial organization.

PNC claims that MCL 208.65(b)(iv) indicated that the DOT can only include interest received by PNC in the state of Michigan when calculating PNC's tax base under the SBT. PNC argues that because it did not physically come into possession of any cash or check used as payment on a loan within the borders of the state of Michigan, it did not "receive" this interest income within the state of Michigan and, therefore, this interest income was improperly included in its tax base. To support its argument, PNC discussed the meaning of the term "received" in great detail and provided an extensive analysis of the DOT's uncertainties and contradictions in interpreting this statute in other contexts.

Yet despite PNC's determined efforts, we remain unconvinced that PNC's interpretation of MCL 208.65(b)(iv) is correct. It seems illogical that the Legislature would have intended to exempt from taxation interest income earned on loans secured by Michigan property or made to Michigan customers simply because the payments on these loans were sent to an out-of-state mailing address. PNC's interpretation of "received" would set up a perfect tax loophole: any financial institution could avoid paying taxes on interest earned from loans made to Michigan customers or secured by Michigan property simply by requiring its borrowers to mail their payment checks to a post office box in South Bend, Indiana, or Toledo, Ohio.

Further, the clear purpose of MCL 208.65 is to determine the portion of a multistate taxpayer's "business activities" that occurred "within" Michigan and "without" Michigan, i.e., in some other state. It does so by requiring a comparison of the amount of "gross

business in this state" to the amount of "gross business everywhere." "Gross business," according to the statute, includes five categories of income.

We conclude that this statutory scheme required that gross business income of whatever kind must be attributed to the state where a taxpayer engaged in the business activities that resulted in that income. We further conclude that the DOT's reading of MCL 208.65(b)(iv) fulfills this statutory scheme and purpose. Plaintiff received interest income as a result of business activities within Michigan. As a result, plaintiff must pay Michigan tax on that interest. Where plaintiff received that interest is irrelevant to the statutory scheme, and nothing in the language of the statute suggested that it must have been received in Michigan to be taxable.

Affirmed.