*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JESSICA HICKS,

      Plaintiff-Appellant,

v

ADAM JOHN MILLER,

      Defendant-Appellee.

UNPUBLISHED
April 20, 2023

No. 362085
Wayne Circuit Court
LC No. 18-155634-DS
LC No. 2020-000832-NA

JESSICA HICKS,

      Plaintiff-Appellee,

v

ADAM JOHN MILLER,

      Defendant-Appellant.

No. 362087
Wayne Circuit Court
LC No. 18-155634-DS
LC No. 2020-000832-NA

Before: CAVANAGH, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

In Docket No. 362085, plaintiff Jessica Hicks appeals as of right the trial court's orders referring this matter from the juvenile section to the domestic relations section of the family division of Wayne Circuit Court, and ultimately granting defendant Adam Miller sole physical custody and both parties joint legal custody of the parties' minor child, CKM. Hicks argues that the trial court should have awarded the parties joint physical custody, and the court should have appointed her counsel in the custody proceedings.

-1-

In Docket No. 362087, Miller appeals as of right the same orders. Miller argues that the trial court should have awarded him sole legal custody. We disagree with all arguments and affirm.[1]

## I. BACKGROUND FACTS

In LC No. 18-155634-DS, in August 2018, Hicks filed a domestic-relations complaint against Miller. Ultimately, in July 2019, the trial court entered a judgment of custody providing that "the parties shall have joint legal and joint physical custody of the parties' minor child," CKM, and that "the parties shall share parenting time equally." These proceedings occurred in the domestic relations section of the family division of Wayne Circuit Court.

In LC No. 2020-000832-NA, in September 2020, the Department of Health & Human Services (DHHS) filed its petition in Wayne Circuit Court requesting that the trial court assume jurisdiction over CKM.[2] The child-protective matter was referred to the juvenile section of the family division. The petition alleged that "Hicks inhales (huffs) household spray chemicals whose volatile vapors are breathed in and then she passes out or becomes incoherent with the children present. Her substance abuse affects her ability to parent." The petition also alleged that Hicks had multiple encounters with the police in 2020 due to her abuse of household chemicals, as well as an incident in February 2020 in which she assaulted her mother. Miller was not identified as a respondent. DHHS requested that CKM remain in Miller's "care and custody."

At the jurisdictional trial, Hicks admitted that she "had a substance abuse addiction" that somewhat affected her ability to parent her children. Hicks also admitted that at one point, she "got a little physical" with her mother and as a result, she was currently on probation for "the domestic." Hicks informed the trial court that she was employed and searching for housing. The trial court assumed jurisdiction over CKM with respect to Hicks, but termination of her parental rights was not discussed.

The trial court held several dispositional review hearings. As of May 5, 2021, CKM was living with Miller but had supervised visitations with Hicks, and Hicks was seeking employment. The goal continued to be reunification. However, DHHS requested that Miller seek and obtain a custody order for CKM. Accordingly, in July 2021, Miller filed a motion for sole physical and legal custody of CKM. That motion was filed in LC No. 18-155634-DS.

---

[1] In Wayne Circuit Court, custody matters are ordinarily heard by the domestic relations section of the family division, and child-protective matters are heard by the juvenile section of the family division. Custody orders issued by the juvenile section supersede orders by the domestic relations section. Thus, when a particular matter overlaps between the two sections, it is appropriate for the juvenile section to decide both the custody issue and the child-protective issue. See generally, *In re AP*, 283 Mich App 574; 770 NW2d 403 (2009).

[2] There was another child implicated in the petition, but that child is not relevant here.

The custody matter was promptly referred from the domestic relations section to the juvenile section. The trial court ordered that CKM would remain with Miller until the custody hearing in a few months.

At an October 12, 2021 dispositional review hearing, the trial court considered the custody issue as well. The trial court apparently judicially noticed the "neglect file . . . to make a determination that there's been a sufficient change in circumstances." In addition, the trial court was briefly informed that CKM had been living with Miller since "early 2020." The trial court thus found "sufficient change in circumstances for the Court to address the issue of custody."

Having done so, the trial court next briefly heard testimony from Miller and Hicks about the best-interests factors under MCL 722.23. Miller testified that Hicks has "been in contact" with CKM since early 2020, but that the visitations were inconsistent because she was occasionally in "rehab." Miller explained that Hicks had provided CKM with clothing but "nothing very substantial"; that he does not have any criminal convictions; that he does not have any mental or physical issues other than his weight; that CKM was enrolled in "Uplift," an online school in Michigan; that he would encourage a relationship between Hicks and CKM; and that he had never been involved an incident of domestic violence.

Hicks testified that she was the primary caregiver "when we first had [CKM]"; that she had been able to provide CKM with a good household environment when he was younger; that she hoped to enter a transitional housing program in the near future; that she had not consumed alcohol in about 2.5 years and was otherwise "clean" for over 120 days; that she takes medication for depression; that she would be able to co-parent with Miller; and that her domestic-violence incident with her mother was "out of character."

At a December 15, 2021 dispositional hearing, the trial court credited Hicks with working towards sobriety. In addition, Miller informed the trial court that his position on custody had apparently changed since the October 2021 hearing:

> *Mr. Miller*: Yes, your Honor. I just wanted to say I know my position changed recently but I've seen the progress Jessica has made. [CKM] has been having been going to see her –
>
> * * *
>
> *Mr. Miller*: Yes, your Honor. I've seen the progress Jessica has made and I'm just I would be – I would like to keep our current arrangement happening if possible because she's been doing real good and it's great for both of the kids; that's all I have to say about that.
>
> *The Court*: Well, and when you – when you say, "The current arrangement," I mean she has visitation, correct?
>
> *Mr. Miller*: Right, but we technically still have 50-50 custody.
>
> * * *

*The Court*: All right. So even if I grant, you know, custody to you . . . I can still order that mother has parenting time so understanding that, your position is today . . . .

*Mr. Miller*: I was no longer seeking sole physical or legal custody. I was just – I am fine with having joint physical and legal of [CKM] with the mother, Jessica.

*The Court*: All right. So you're saying you don't see any reason why, at least as to your child with the mother, that she couldn't have some unsupervised time on some unsupervised time visiting with your child?

*Mr. Miller*: That is correct. I feel confident in that.

Before issuing its custody ruling, the trial court asked the DHHS caseworker for her position, and the caseworker recommended that Hicks have supervised parenting time "until we get some more drug screens in." The DHHS caseworker added that Hicks had not taken any drug screens for about the previous month, and Hicks explained that "I had to get a new phone and there were some issues with it and I just gotten my email [back up] and running the way it's supposed to be." The trial court indicated that it expected her to resume regular drug screens.

The trial court then ruled that Miller would have sole physical custody and the parties would have joint legal custody, reasoning as follows. With regard to factor (a) (love, affection, and other emotional ties), the parties were equal because they both loved CKM. With regard to factor (b) (capacity and disposition to give the child love, affection, and guidance), Miller was favored because Hicks had substance-abuse issues that she was currently working to address. With regard to factor (c) (capacity and disposition to provide the child with food, clothing, and medical care), Miller was favored because he was currently providing such needs to CKM. With regard to factor (d) (length of time the child has lived in a stable environment), Miller was favored because CKM was currently living with him. With regard to factor (e) (permanence as a family unit), Miller was favored for the same reason. With regard to factor (f) (moral fitness of the parties involved), Miller was favored because Hicks had substance-abuse issues. With regard to factor (g) (mental and physical health of the parties), the parties were equal. With regard to factor (h) (home and school record of the child), Miller was favored because he was currently caring for CKM.[3] With regard to factor (i) (the reasonable preference of the child), the parties were equal because CKM was too young to express an interest. With regard to factor (j) (the willingness and ability of each parent to facilitate a relationship between the child and the other parent), the parties were equal because they each expressed such a willingness and ability. The trial court did not mention factor (k) (domestic violence). Finally, with regard to factor (*l*) (any other factor), Miller was favored because Hicks was still addressing her issues with substance abuse.

With these findings in mind, the trial court ruled that Miller and Hicks would share joint legal custody because "they seem to be able to work quite well together." However, the trial court

---

[3] After discussing factor (h), the trial court briefly noted that "there's an established custodial environment" with Miller because CKM was living with him.

ruled that Miller would have sole physical custody, particularly because DHHS currently recommended that Hicks only have supervised parenting time.

On January 31, 2022, the trial court entered an order providing that Miller was awarded sole physical custody, and the parties were awarded joint legal custody. The order also stated as follows:

> MOTHER SHALL HAVE SUPERVISED DAY VISITS ON THE CONDITION THAT MOTHER HAS 2 CONSECUTIVE CLEAN DRUG SCREENS, THEN THE MOTHER MAY HAVE SUPERVISED OVERNIGHT VISITATION W/MATERNAL GRANDMOTHER . . . SUPERVISING THE VISITS.

The order also provided that the child-protective proceedings for CKM were dismissed. The order was entered in the juvenile section.

On February 4, 2022, the trial court entered an order referring the "child custody matter" from the juvenile section to the domestic relations section. The order stated that the custody decision issued by the juvenile section superseded any prior custody decision issued by the domestic relations section.

Both parties now appeal.

## II. PHYSICAL CUSTODY

In Docket No. 362085, Hicks argues that the trial court erred with regard to several of the statutory best-interests factors, and as a result, erred by awarding Miller sole physical custody. We disagree.

This Court applies the following standards of review in custody cases:

> In matters involving child custody, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. This Court will not interfere with the trial court's factual findings unless the facts clearly preponderate in the opposite direction. Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion. In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic. Clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law. This Court reviews the trial court's determination regarding a child's best interests for clear error. This Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments. [*Brown v Brown*, 332 Mich App 1, 8-9; 955 NW2d 515 (2020) (quotation marks and citations omitted).]

"[W]hen seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Lieberman v Orr*,

319 Mich App 68, 81; 900 NW2d 130 (2017). "When a modification would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is in the child's best interest." *Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010). "If the proposed change does not change the custodial environment, however, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Id*. "In making a custody determination, a trial court is required to evaluate the best interests of the children under the 12 statutorily enumerated factors [in MCL 722.23]." *Kessler v Kessler*, 295 Mich App 54, 63; 811 NW2d 39 (2011).

MCL 722.23 provides as follows:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

As noted, the trial court found that factors (a), (g), (i), and (j) were equal, and factors (b), (c), (d), (e), (f), (h), and (*l*) favored Miller. The trial court did not address factor (k), although Hicks concedes on appeal that factor (k) favors Miller. Hicks also concedes on appeal that factors (c) and (j) favor Miller.

In this case, the evidence showed that CKM had been living with Miller since "early 2020," although Hicks had some visitation. Thus, as the trial court found, CKM had an "established custodial environment" with Miller. Although the trial court did not expressly state the burden of proof, it may be assumed that the trial court was aware that the preponderance-of-the-evidence standard applied because modifying the existing custody order from joint physical custody to sole physical custody for Miller would not change CKM's established custodial environment. See *Shade*, 291 Mich App at 23.

The trial court did not abuse its discretion by ultimately awarding Miller sole physical custody. As of October 2021, when the trial court heard testimony about the best-interests factors, CKM had been living with Miller for well over a year, and Hicks was in treatment but hopeful to enter transitional housing in the near future. This testimony indicated that CKM had a stable household environment with Miller, and it was uncertain when Hicks would be able to provide her own stable household environment. Moreover, there is nothing in the record to suggest that Miller was an inappropriate parent at any point before or during this case. Indeed, he was not identified as a respondent when DHHS filed the child-protective petition in September 2020. The fact that Miller provided a stable household environment for CKM and was otherwise an appropriate parent, whereas Hicks was inconsistent in this regard, shows that the trial court did not clearly err by finding that Miller was favored with regard to factors (b), (c), (d), (e), and (h), each of which somehow concern the ability of the party to provide a stable household environment and act as an appropriate, caring parent for the child's physical and mental needs.

Moreover, the trial court did not clearly err with regard to factor (f). Our Supreme Court has explained that "drinking problems" weigh against a parent under factor (f) because it is a "type of morally questionable conduct relevant to one's moral fitness as a parent." *Fletcher v Fletcher*, 447 Mich 871, 887 n 6; 526 NW2d 889 (1994). If so, it follows that abuse of household chemicals would similarly weigh against Hicks under factor (f), given that she admitted earlier in the proceedings that such abuse affected her ability to parent.

With that in mind, the trial court arguably committed clear error by finding that factor (*l*), which concerns "[a]ny other factor considered by the court to be relevant to a particular child custody dispute," weighed in favor of Miller. In addressing factor (*l*), the trial court simply repeated the facts that it used to address several of the preceding factors. However, factor (*l*) refers to "[a]ny *other* factor," which suggests that it may only be invoked when the case presents facts that are not otherwise contemplated by the other express factors. But that error was harmless because the bulk of the factors weighed in favor of Miller. See MCR 2.613(A).

For these reasons, the trial court did not clearly err by finding that the bulk of the best-interests factors weighed in favor of Miller, so it did not abuse its discretion by awarding Miller sole physical custody.[4]

## III. APPOINTED COUNSEL

In Docket No. 362085, Hicks argues that the trial court erroneously failed to appoint counsel for her in the custody proceedings. We disagree.

We first note that this issue is arguably waived because it was not raised in the trial court. See *People v Bailey*, 330 Mich App 41, 53; 944 NW2d 370 (2019). To the extent that the failure to appoint counsel implicated Hicks's constitutional rights, however, this issue is reviewed for plain error. See *id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 753; 597 NW2d 130 (1999). We review de novo questions of statutory interpretation. *PNC Nat'l Bank Ass'n v Dep't of Treas*, 285 Mich App 504, 505; 778 NW2d 282 (2009).

With regard to a constitutional right to appointed counsel, "Michigan recognizes a right to counsel in termination of parental rights actions, as well as in paternity proceedings." *Haller v Haller*, 168 Mich App 198, 199; 423 NW2d 617 (1988) (internal citation omitted). However, there is no due-process right to appointed counsel in custody proceedings. *Id*. at 200. It follows that there is no right to effective assistance of counsel in such proceedings. *Id*.[5] See also *In re AP*, 283 Mich App 574, 578; 770 NW2d 403 (2009) (explaining that when the juvenile section decides a custody matter, it "must abide by the relevant procedural and substantive requirements of the [Child Custody Act]"). Thus, the trial court did not violate Hicks's constitutional rights by failing to appoint counsel for her in the custody proceedings.

To the extent that Hicks argues that she had a statutory right to appointed counsel, we cannot identify a statute clearly providing such a right, and Hicks does not cite any statute in the analysis section of her brief on appeal. In her statement of questions presented, however, Hicks cites "MCL 712.A.17(c)(4)(a)." MCL 712A.17c provides, in relevant part, as follows:

---

[4] In addition to the best-interests factors discussed herein, Hicks also concedes on appeal that factors (j) and (k) favor Miller. However, we disregard that concession because the trial court found that factor (j) favored neither party and did not address factor (k) at all. Accepting Hicks's concession, however, would strengthen the ultimate conclusion that the trial court did not abuse its discretion by awarding Miller sole physical custody.

[5] It appears that the weight of authority is consistent with *Haller*. See, e.g., *Dennis O v Stephanie O*, 393 P3d 401, 403 (Alaska, 2017) (declining to constitutionally mandate "court-appointed counsel for every indigent parent in a child custody proceeding when the opposing parent is represented by private counsel").

(4) In a proceeding under section 2(b) or (c) of this chapter, the court shall advise the respondent at the respondent's first court appearance of all of the following:

(a) The right to an attorney at each stage of the proceeding.

(b) The right to a court-appointed attorney if the respondent is financially unable to employ an attorney.

(c) If the respondent is not represented by an attorney, the right to request and receive a court-appointed attorney at a later proceeding.

(5) If it appears to the court in a proceeding under section 2(b) or (c) of this chapter that the respondent wants an attorney and is financially unable to retain an attorney, the court shall appoint an attorney to represent the respondent.

As used in MCL 712A.17c(4), section 2(b) refers to MCL 712A.2(b), which is the jurisdictional statute for child-protective proceedings. Section (2)(c) is an obscure jurisdictional provision that applies to instances "where jurisdiction has been waived by a chancery court which first acquired jurisdiction over such children by virtue of divorce proceedings between the parents." *Matter of Robey*, 136 Mich App 566, 577; 358 NW2d 362 (1984) (quotation marks and citation omitted).

Hicks suggests that because the child-protective proceedings were resolved on the basis of the custody proceedings (i.e., the wardship was only dismissed because Miller received sole physical custody), then the custody proceedings were a "stage of the [child-protective] proceeding" for the purposes of MCL 712A.17c(4)(a), thus entitling her to counsel in the custody proceedings.

In *Jendrusik v Marine*, unpublished per curiam opinion of the Court of Appeals, issued October 20, 2022 (Docket No. 359502), the facts were similar to the instant case. The trial court granted custody of the parties' minor child to the father, and as a result, the child-protective proceedings against the mother were dismissed. *Id*. at 2-3. On appeal, the mother argued that she "was entitled to court-appointed counsel in the custody proceedings because those proceedings were so intertwined as to be considered a 'stage of the [child-protective] proceeding' under MCL 712A.17c(4)(a)." *Id*. at 3. This Court declined to resolve that issue, reasoning as follows:

Ultimately, a new custody order was entered which granted defendant sole legal and physical custody of AM, and granted plaintiff weekly, supervised parenting time. Once AM was determined to be properly protected in the placement with a parent, the purpose of the child-protective proceeding was achieved and jurisdiction over AM was terminated. And plaintiff does not challenge the outcome of the child-protective proceeding, i.e., the termination of jurisdiction over AM. That is, plaintiff does not argue that the child-protective proceeding was improperly concluded. Rather, plaintiff only challenges the outcome of the custody proceedings and there is no right to court-appointed counsel in custody proceedings. Although plaintiff argues that the custody case became the mechanism through which the trial court and DHHS resolved the neglect case, plaintiff does not challenge the outcome of the child-protective proceeding. And

plaintiff's parental rights were not terminated in the child-protective proceeding. In other words, plaintiff retained her rights to parent AM. The result of the resolution of the custody matter was simply that the child-protective proceeding was no longer necessary—the child was safe. Accordingly, the issue whether the right to counsel should attach to certain custody proceedings that become "inextricably intertwined" with a child-protective proceeding—the result of which is ultimately challenged as outcome determinative and detrimental to a parent— need not be resolved in this case challenging only the order entered in the custody matter. [*Id*. at 3-4 (cleaned up).]

The same reasoning applies here.[6] Hicks only challenges the outcome of the custody proceedings and does not argue that the child-protective proceedings were improperly concluded. To explain the reasoning of *Jendrusik* a bit differently, suppose that no child-protective proceedings had ever been filed against Hicks. In such a case, she clearly would not have had a statutory right to counsel in the custody proceedings. Thus, the fact that the custody proceedings were subsequently used as a basis for dismissing the child-protective proceedings is irrelevant because that subsequent dismissal could not have affected the earlier custody proceedings themselves. Consistent with *Jendrusik*, we decline to decide whether Hicks had a statutory right to appointed counsel in the custody proceedings.[7]

For these reasons, the trial court did not erroneously fail to appoint counsel for Hicks in the custody proceedings.

## IV. LEGAL CUSTODY

In Docket No. 362087, Miller argues that the trial court abused its discretion by awarding the parties joint legal custody because it instead should have awarded him sole legal custody. We disagree.

"[W]hen parents share joint legal custody . . . the parents shall share decision-making authority as to the important decisions affecting the welfare of the child." *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) (quotation marks and citation omitted). Thus, for example, "a relocating parent who shares legal custody with another parent does not have the authority to unilaterally make important decisions affecting the welfare of the child, even if the relocating

---

[6] "Unpublished opinions are . . . not binding authority but may be persuasive or instructive." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020). See also MCR 7.215(C)(1).

[7] Regardless, we note that MCL 712A.17c(4) does not create any statutory right to counsel; it simply lists three statements of advice that the trial court must give to "the respondent" at the "first court appearance." MCL 712A.17c(5), in contrast, does create a statutory right to counsel. However, the use of the term "the respondent," as opposed to a broader term such as "the parent" or "the party," suggests that MCL 712A.17c(5) is more limited to child-protective proceedings.

In any event, as noted, we need not reach the statutory interpretation question.

parent is the primary physical custodian." *Pierron v Pierron*, 282 Mich App 222, 246; 765 NW2d 345 (2009). Joint custody may be inappropriate when "the record reflect[s] that the parties would not be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." *Wright v Wright*, 279 Mich App 291, 299-300; 761 NW2d 443 (2008) (quotation marks and citation omitted). "It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents." MCL 722.27a(1).[8] The trial court should consider the factors set forth in MCL 722.23 in determining whether joint legal custody is warranted. See MCL 722.26a(1)(a).

In this case, Miller personally informed the trial court at the December 15, 2021 dispositional review hearing that he no longer wished to pursue sole physical and legal custody because Hicks was cooperative. Thus, the joint-custody issue is arguably waived because Miller is now asserting a different position on appeal than he did in the trial court, see *Fed Deposit Ins Corp v Garbutt*, 142 Mich App 462, 472; 370 NW2d 387 (1985), but in any event, given the record before this Court,[9] the trial court did not abuse its discretion by awarding the parties joint legal custody. It is true that the trial court properly found, as discussed *supra*, that the bulk of the statutory best-interests factors favored Miller. Importantly, however, the trial court found that factor (j), which concerns "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent," MCL 722.23(j), favored both Miller and Hicks equally. The trial court certainly did not commit clear error in so finding, given that it had been informed by both Miller and Hicks earlier in the hearing that they were cooperating well. In other words, it appeared to the trial court that the parties would be able to "cooperate and generally agree" regarding important decisions in CKM's life. See *Wright*, 279 Mich App at 299-300. There is nothing logically or legally inconsistent with the trial court's ultimate ruling that Miller would have sole physical custody, but that the parties also would be able to cooperate for the purposes of legal custody. To the extent that the cooperative relationship between the parties may have changed, Miller may file a new motion seeking modification of the current custody order.

## V. CONCLUSION

In all relevant respects, the trial court did not make findings of fact against the great weight of the evidence or commit a palpable abuse of discretion or a clear legal error on a major issue. We affirm.

/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra
/s/ Michael J. Riordan

---

[8] This statute applies to parenting time, but the quoted principle is applicable to legal custody as well.

[9] Miller suggests on appeal, without record support, that Hicks assaulted her mother at some point after December 2021.