*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUNSET ASSISTED LIVING,

Plaintiff-Appellant,

v

FARMERS INSURANCE EXCHANGE,

Defendant-Appellee.

UNPUBLISHED
April 15, 2025
1:31 PM

No. 370095
Wayne Circuit Court
LC No. 23-000504-NF

Before: MARIANI, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

Plaintiff Sunset Assisted Living appeals as of right the trial court's opinion and order granting summary disposition in favor of defendant Farmers Insurance Exchange pursuant to MCR 2.116(C)(10). On appeal, plaintiff argues that the trial court erred by ruling that defendant only was required to pay for 56 hours per week of attendant-care services under MCL 500.3157(10) of the no-fault act, MCL 500.3101 *et seq*. Plaintiff also argues that the trial court erred by ruling that defendant was not liable for penalty interest under MCL 500.3142 and attorney fees under MCL 500.3148, and by denying its motion for reconsideration on that issue. For the reasons set forth, we affirm in part, reverse in part, and remand to the trial court for further proceedings.

## I. FACTS

On January 11, 2023, plaintiff filed its complaint against defendant, alleging that it had provided attendant-care services to the underlying no-fault claimant, JR, after a motor-vehicle accident, that JR assigned her right to receive personal protection insurance (PIP) benefits to plaintiff, but that defendant "has unreasonably withheld and/or delayed payment for these charges." Documentation attached to the complaint, titled "Health Insurance Claim Form," indicated that plaintiff provided services to JR on a daily basis between July 2021 and March 2022.

On September 19, 2023, defendant moved for summary disposition "[b]ased on MCL 500.3157." In the accompanying brief, defendant explained that JR was injured in a June 16, 2021 motor-vehicle accident, that plaintiff "charged for care that was provided by the claimant's mother, Tiffany Crawley . . . in excess of 56 hours per week," and that doing so was contrary to MCL 500.3157(10), which essentially states that when a family member "directly or indirectly" provides

-1-

attendant care to an injured person in the injured person's home, the no-fault insurer only is required to pay for 56 hours of attendant care per week. Defendant asserted:

> Here, there is no question of fact that Sunset Assisted Living contracted Claimant's mother, Tiffany Crawley, to provide care for the underlying Claimant [JR]. The statute was clearly written to include family provided attendant care that was provided "directly or indirectly." Even if Tiffany Crawley filled out forms provided by the Sunset Assisted Living agency, there is no dispute as to her relation to Claimant [JR]. As such, this family provided attendant care must abide by the statutory limits of MCL 500.3157 and be capped at 56 hours per week.

On December 16, 2023, plaintiff moved for partial summary disposition under MCR 2.116(C)(10), arguing that defendant failed to timely pay PIP benefits and, therefore, was subject to penalty interest under MCL 500.3142. Plaintiff further contended that under the circumstances of this case, it was entitled to attorney fees from defendant under MCL 500.3148 as well.[1]

Other than a short summation in its brief in support of its motion for summary disposition, plaintiff offered little to support its arguments. The section of the supporting brief titled "INTRODUCTION AND RELEVANT FACTS" provides, in its entirety:

> As set forth in the attached motion, Plaintiff, sustained multiple injuries arising out of a motor vehicle accident. These injuries included injuries to her head for which she had surgery. As a result, Plaintiff underwent reasonably necessary treatment with medical providers. Plaintiff also received replacement services and attendant care. The bills and necessary proof were timely submitted to Defendant.

> In 2023, Defendant issued payment on these claims **late without the required penalty interest. (See Exhibit B)**.

> Defendant is now precluded from arguing that the payments were not owed, not late or that Plaintiff is not entitled to Attorney's fees.

The remainder of the brief summarizes no-fault law, specifically as it relates to a no-fault insurer's obligation to promptly pay PIP benefits and the possible penalty interest under MCL 500.3142 and liability for attorney fees under MCL 500.3148 if it fails to do so. In addition, plaintiff attached two documents as exhibits to the brief, the complaint initiating this case, and an

---

[1] As explained *infra*, whether a no-fault insurer failed to timely pay PIP benefits as required by MCL 500.3142, and thus is subject to penalty interest, generally is a question of fact for a jury—unless, of course, either the claimant or the insurer is entitled to summary disposition on this issue as a matter of law. However, whether a no-fault insurer is liable for a claimant's attorney fees under MCL 500.3148 for unreasonably delaying payment of PIP benefits is a question of law for the court in post-judgment proceedings.

October 31, 2023 check from defendant to plaintiff in the amount of $91,728.00. Plaintiff did not identify any other factual support in its motion, brief, or accompanying exhibits.[2]

On January 2, 2024, defendant filed its own motion for summary disposition under MCR 2.116(C)(8) and (C)(10), asserting:

> During the course of discovery, Defendant attempted to determine which claims were outstanding by serving written discovery. At Case Evaluation, Plaintiff presented a demand that included medical bills in excess of the 56 hour per week limit. Defendant issued payments in compliance with the 56 hour per limit.

> **(Exhibit B- Correspondence with Payments).** The payment log reflects that Defendant paid benefits in the total amount of $91,728.00. **(Exhibit C – Payment Log).** Defendant made payment in accordance with the 56 hour per week limit on family provided attendant care and no claims remain outstanding.

Substantively, defendant argued that because it paid plaintiff in an amount consistent with the "Medicare Fee Schedule," and because plaintiff was not entitled to any payments in excess of the 56-hour weekly cap under MCL 500.3157(10), all claims to plaintiff were satisfied and the case should be dismissed.

Plaintiff responded that the 56-hour weekly cap under MCL 500.3157(10) does not apply in this case because "Sunset Assisted Living provided the services requested and billed for the attendant care services. While [JR's] relatives are employed by Sunset Assisted Living and doing the actual work, they are not the one [sic] responsible for providing the attendant care services." Plaintiff further argued that defendant failed to timely pay PIP benefits under MCL 500.3142, reasoning as follows:

> Defendant's Payment Log indicates that it received bills from Plaintiff periodically from December 2021 through March 2022. The Payment Log and the check attached as exhibits to Defendant's Motion show that payment for the 56 hours per week of attendant care was not paid until October 31, 2023. (See Defendant's Exhibits B and C) Therefore, this evidence establishes unequivocally that the bills were overdue when paid. The Payment Log further shows that no interest was paid, even though the bills were overdue when paid.

---

[2] Thus, while the factual basis for the partial motion for summary disposition is not clearly stated, it may be inferred from the motion and accompanying brief that defendant either paid nothing to plaintiff until October 2023 or that, according to plaintiff, defendant did not pay a sufficient amount to plaintiff. It also may be inferred that plaintiff believed that it sent sufficient notice of the requested PIP benefits to defendant in advance of the 30- or 90-day period required by MCL 500.3142 and that defendant's apparent delay or outright failure to pay sufficient PIP benefits to plaintiff on a timely basis rendered defendant liable for attorney fees under MCL 500.3148 as well.

Plaintiff concluded that "a question of material fact exists as to whether payment of the bills was overdue" under MCL 500.3142 and, thus, plaintiff has a right to seek penalty interest at trial and, if successful, attorney fees in post-judgment proceedings under MCL 500.3148.

In reply, defendant reiterated its position that the 56-hour weekly cap under MCL 500.3157(10) applies in this case. Further, defendant argued that payment of PIP benefits was not untimely under MCL 500.3142:

> Plaintiff's counsel also argues that there was a delay in the payment and that there is a question of fact as to interest and attorney's fees. However, Plaintiff's counsel does not address the fact that its claims must be submitted with reasonable proofs before any interest or attorney's fees may be addressed. In this case, Plaintiff's counsel did not submit responses to Defendant's Interrogatories and Request for Production of Documents until September 12, 2023 and on this date Plaintiff's counsel provided Health Insurance Claim Forms without any medical records in support of its claims. Defendant's Request for Productions requested copies of any documents in support of Plaintiff's claims that its charges are reasonable and customary and Plaintiff responded "Do not have." Defendant also requested a complete patient file with regard to this claim, including but not limited to, any documents filled out by the patient, any documents received by Plaintiff from any source with respect to this patient, and any document maintained by Plaintiff in connection with this patient. Plaintiff responded "Plaintiff will sign upon receipt of signed authorization."
>
> . . . In this case, Plaintiff's counsel provided discovery responses on September 12, 2023. Defendant issued payments on all applicable claims on October 31, 2023, exactly 49 days after proofs were presented. Plaintiff's counsel does not dispute the date of Defendant's payment and there is no question of fact that these payments were issued less than 90 days after the receipt of proofs. Thus, there is no question of fact as to the applicability of interest pursuant to MCL 500.3142 and attorney's fees pursuant to MCL 500.3148 as Defendant issued these payments in a timely manner for all claims compensable under the Amended No-Fault Act.

However, no documentary exhibits were attached to the reply brief to establish those alleged facts.

Without oral argument beforehand, the trial court issued a written opinion granting summary disposition in favor of defendant. It concluded that the 56-hour weekly cap applies in this case, noting that "the relevant statute states that the attendant care cap applies if the attendant care is provided directly, or indirectly through another person. Plaintiff's response concedes that Sunset Assisted Living is a corporation and viewed as a person under the law. . . . Thus, the applicable statutory language of 'indirectly through another person' applies directly in this case." Second, the trial court concluded that there was no question of fact as to penalty interest and possible attorney fees on the basis of defendant failing to timely pay PIP benefits. In so concluding, the trial court expressly adopted the portion of defendant's reply brief quoted above.

-4-

Plaintiff moved for reconsideration, arguing that the trial court "committed a palpable error in using the date Plaintiff responded to discovery requests as the date the clock started running for payment of Plaintiff's claims." Specifically, plaintiff argued:

> The applicable statute, MCL 500.3142, states that the clock starts ticking for payment when the Defendant receives reasonable proof of a Plaintiff's claims. It does not state that the clock starts ticking when the Plaintiff answers discovery requests. This Court should have determined what was the first date that Defendant received reasonable proof of Plaintiff's claims and then used that date to determine whether a question of fact existed as to whether payment was overdue.
>
> Defendant's own Payment Logs state that it received Plaintiff's bills in batched [sic] in December 2021 and March 2022. Moreover, attached to this Motion are the records that were faxed to Defendant in December 21 and March 22. The documentation provided by Plaintiff's counsel in response to Defendant's discovery requests was merely duplicative of the information that Defendant already had in its possession. Defendant's insulation [sic?] that the first time that it received the documentation was in September 2023 is nothing short of a fraud on this Court. Unquestionably, Defendant was provided reasonable proof of the fact and the amount of Plaintiff's claim in late 2021 and early 2022 and Defendant owes penalty interest, which it has not paid.

Thus, as indicated, for the first time during this litigation, in its motion for reconsideration, plaintiff submitted documentary exhibits to the trial court suggesting that plaintiff provided defendant notice that PIP benefits were owing. These exhibits, totaling a few hundred pages, include several "Health Insurance Claim Form[s]" reflecting that plaintiff provided JR with attendant care between July 2021 and February 2022. The exhibits also include what appear to be daily checklists that were used to monitor JR. Further, the exhibits include "Fax Confirmation[s]" variously dated in December 2021 and March 2022. The fax confirmations do not clearly indicate the material faxed, nor who received the fax. But the clear implication is that, as plaintiff represents in its brief for reconsideration, it faxed to defendant numerous documents in support of its request for PIP benefits in December 2021 and March 2022.

On February 23, 2024, the trial court denied the motion for reconsideration without explanation. This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo the grant or denial of summary disposition." *Daystar Seller Fin, LLC v Hundley*, 326 Mich App 31, 34; 931 NW2d 15 (2018). "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and

citation omitted). This Court also reviews de novo questions of statutory interpretation. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009).

"This Court reviews a trial court's decision to grant or deny a motion for reconsideration for an abuse of discretion." *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Id*.

## III. DISCUSSION

## A. ATTENDANT-CARE BENEFITS

Plaintiff first argues that the trial court erred by ruling that the 56-hour weekly cap for attendant-care benefits under MCL 500.3157(10) applies in this case. While we disagree with the specific reasoning of the trial court, we agree with its ultimate ruling.

Before 2019, MCL 500.3157 provided as follows:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.

Effective June 11, 2019, MCL 500.3157 was amended by 2019 PA 21 as part of a substantial revision of the no-fault act. MCL 500.3157 now provides, in relevant part:

> (10) For attendant care rendered in the injured person's home, an insurer is only required to pay benefits for attendant care up to the hourly limitation in [MCL 418.315 of the Worker's Disability Compensation Act]. This subsection only applies if the attendant care is provided directly, or indirectly through another person, by any of the following:

> (a) An individual who is related to the injured person.

> (b) An individual who is domiciled in the household of the injured person.

> (c) An individual with whom the injured person had a business or social relationship before the injury.

> (11) An insurer may contract to pay benefits for attendant care for more than the hourly limitation under subsection (10).

> * * *

> (15) As used in this section:

-6-

\* \* \*

   (h) "Person", as provided in [MCL 500.114] includes, but is not limited to, an institution.

   The statute referenced in subsection (10), MCL 418.315 of the Worker's Disability Compensation Act, provides that "[a]ttendant or nursing care shall not be ordered in excess of 56 hours per week if the care is to be provided by the employee's spouse, brother, sister, child, parent, or any combination of these persons." The statute referenced in subsection (15), MCL 500.114 of the Insurance Code, provides that " '[p]erson' as used in this code includes an individual, insurer, company, association, organization, Lloyds, society, reciprocal or inter-insurance exchange, partnership, syndicate, business trust, corporation, and any other legal entity."[3]

   MCL 500.3157(10)(a) provides that the 56-hour weekly cap applies when "the attendant care is provided directly, or indirectly through another person, by . . . [a]n individual who is related to the injured person." The word "person," as found in the term "another person" and as used in MCL 500.3157(10)(a), may alternatively refer to a natural person or a legal entity. See MCL 500.3157(15)(h). Further, the word "individual" exclusively refers to a natural person; otherwise, MCL 500.3157(10) would not separately refer to "person[s]" and "individual[s]."[4] Consequently, the 56-hour weekly cap under MCL 500.3157(10)(a) applies in two instances:

   First, when the attendant care is provided directly by a natural person who is related to the injured person.

   Second, when the attendant care is provided indirectly, through any natural person or legal entity, by a natural person who is related to the injured person. [See MCL 500.3157(10)(a).]

   We agree with plaintiff that the second instance, i.e., the "indirectly" instance, which was relied upon by the trial court, would apply when a natural person who is related to the injured person is responsible for providing attendant care to the injured person and arranges for some other natural person or legal entity to provide that care. In other words, the second instance would apply

---

[3] In *Andary v USAA Cas Ins Co*, 512 Mich 207; 1 NW3d 186 (2023), our Supreme Court concluded that "application of the 2019 amendments of MCL 500.3157(7) and (10) to [the injured parties] would constitute a retroactive reduction of their vested contractual rights to receive uncapped PIP benefits pursuant to the insurance policies and incorporated statutes that existed when they were injured. . . . Accordingly, the insurance policies and the disputed portion of the no-fault statutes that existed when [the injured parties] were injured control their entitlement to PIP benefits, not the amended provisions enacted by 2019 PA 21 and 2019 PA 22." *Id*. at 256-257. While *Andary* nominally concerned MCL 500.3157(10), the substance of that opinion actually concerned the retroactivity of the 2019 no-fault amendments limiting PIP benefits, and it did not analyze that subsection in a manner that would be relevant for the instant case.

[4] In addition, only a natural person may be "related to the injured person." See MCL 500.3157(10)(a).

-7-

when the family member acts as a principal who indirectly acts through an agent. Therefore, as plaintiff argues on appeal, the second instance applies in this case if JR's family members were initially responsible for providing attendant care to JR, but those family members in turn hired plaintiff to provide the attendant care. The second instance does not apply to the facts actually before us, in which plaintiff is the principal who initially was responsible for providing attendant care to JR, but plaintiff in turn hired her family members to act as its agents and actually provide attendant care to JR.

Nonetheless, it seems straightforward that JR's family members "directly" provided attendant care to JR. See MCL 500.3157(10)(a). That is, her family members actually were responsible for providing in-home, attendant-care services such as health monitoring and performing related tasks. No other natural persons or legal entities were "directly" involved in providing that attendant care. Plaintiff was involved only in an indirect manner. In other words, the fact that plaintiff here is the employer-principal that is indirectly responsible for providing attendant care is irrelevant. The only relevant fact before us is that JR's family members directly provided attendant care to her. For this reason, the 56-hour weekly cap applies here.

Accordingly, while the trial court incorrectly relied upon the "indirectly" language in MCL 500.3157(10), it correctly ruled that the 56-hour weekly cap applies in this case because JR's family members "directly" provided attendant care to her. We affirm the trial court on this issue.[5]

## B. TIMELINESS OF BENEFITS PAID

Plaintiff next argues that the trial court, in granting defendant summary disposition on the issues, erred by ruling that there was no question of fact as to whether defendant paid plaintiff PIP benefits on a timely basis as required by MCL 500.3142. According to plaintiff, a jury should determine whether defendant failed to satisfy MCL 500.3142, thereby subjecting it to penalty interest. Then, if the jury found in plaintiff's favor, the trial court should determine whether to award attorney fees under MCL 500.3148. Relatedly, and alternatively, plaintiff argues that the

---

[5] Admittedly, defendant only argued in the trial court that the "indirectly" language governs this case, and did not argue on appeal that the "directly" language should also be read to govern this case until oral argument. However, it is essentially impossible to interpret MCL 500.3157(10) without addressing the "directly" language, and we consider the interpretive question sufficiently presented to permit our consideration of it. See *Tolas Oil & Gas Exploration Co v Bach Srvs & Mfg, LLC*, 347 Mich App 280, 289-290; 14 NW3d 472 (2023) (explaining that "this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented") (quotation marks and citation omitted). Plaintiff, for its part, argues that the "directly" language does not govern this case because, while JR's family members may have performed the attendant care at issue, they did not "provide[]" it; instead, plaintiff was the one that "provided" the care by contracting with those family members to perform it. We fail to see, however, why "provide[]" in this context is properly interpreted to exclude the caregiving conduct of JR's family members, such that they could be deemed to have not directly provided that care within the meaning of MCL 500.3157(10).

trial court abused its discretion when it denied plaintiff's motion for reconsideration on this issue. We agree that the trial court abused its discretion by denying the motion for reconsideration, as there may be a question of fact regarding defendant's compliance with MCL 500.3142.

MCL 500.3142 provides as follows:

> (1) Personal protection insurance benefits are payable as loss accrues.

> (2) Subject to subsection (3), personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. Subject to subsection (3), if reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Subject to subsection (3), any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. . . .

> (3) For personal protection insurance benefits under [MCL 500.3107(1)(a)], if a bill for the product, service, accommodations, or training is not provided to the insurer within 90 days after the product, service, accommodations, or training is provided, the insurer has 60 days in addition to 30 days provided under subsection (2) to pay before the benefits are overdue.

> (4) An overdue payment bears simple interest at the rate of 12% per annum.

Further, MCL 500.3148(1) provides that "an attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits that are overdue. The attorney's fee is a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

Under MCL 500.3142 and MCL 500.3148, "attorney fees are payable only on overdue benefits for which the insurer has unreasonably refused to pay or unreasonably delayed in paying." *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008) (quotation marks and citation omitted). "Michigan courts have repeatedly construed MCL 500.3142(2) in accordance with its plain language . . . and have not allowed an assigned insurer additional time beyond the statutory 30 days to conduct its own investigation regarding the eligibility of the claimant to receive benefits." *Bronson Health Care Grp, Inc v Titan Ins Co*, 314 Mich App 577, 582; 887 NW2d 205 (2016). "Under the plain language of the statute, the claimant shoulders the initial burden to supply reasonable proof of her entire claim, or reasonable proof for some portion thereof." *Moore*, 482 Mich at 523. Moreover, "[p]enalty interest must be assessed against a no-fault insurer if the insurer refused to pay benefits and is later determined to be liable, irrespective of the insurer's good faith in not promptly paying the benefits." *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 730; 761 NW2d 454 (2008) (quotation marks and citation omitted). Ordinarily, "[w]hether [the] plaintiff provided reasonable proofs of loss and whether so after doing, the defendant failed to pay the claims within 30 days were questions before the jury that [the] plaintiff bore the burden of proving." *Id.*

Regarding motions for reconsideration, MCR 2.119(F)(3) provides as follows:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

"Ordinarily, a trial court has discretion on a motion for reconsideration to decline to consider new legal theories or evidence that could have been presented when the motion was initially decided." *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012). "The rule does not categorically prevent a trial court from revisiting an issue even when the motion for reconsideration presents the same issue already ruled on; in fact, it allows considerable discretion to correct mistakes." *Macomb Co Dep't of Human Servs v Anderson*, 304 Mich App 750, 754; 849 NW2d 408 (2014).

In this case, the substantial documentation submitted with plaintiff's motion for reconsideration, at a minimum, creates a question of fact as to whether defendant failed to timely pay PIP benefits under MCL 500.3142. According to that documentation, plaintiff faxed certain medical records and claim forms to defendant periodically between December 2021 and March 2022, but defendant did not pay anything to plaintiff until October 2023. Under MCL 500.3142 (2) and (3), assuming that the documentation faxed by plaintiff to defendant constituted "reasonable proof of the fact and of the amount of loss sustained," defendant had either 30 days or 90 days to pay each individual bill, depending on when the underlying attendant care was provided. Regardless, because the final documentation was faxed by plaintiff to defendant in March 2022 and defendant did not pay anything until October 2023, that payment clearly was outside the 90-day maximum allowed by MCL 500.3142(3).

Defendant, on appeal, does not directly address the substantial documentation submitted with plaintiff's motion for reconsideration, although it suggests that this documentation still was insufficient to satisfy the "reasonable proof of the fact and of the amount of loss sustained" standard of MCL 500.3142(2). Instead, defendant argues that because none of this documentation was submitted to the trial court before its written opinion and order granting summary disposition in favor of defendant, it logically follows that the trial court did not err by entering that written opinion and order.

For a complete understanding of this appellate issue and its chronology, we first, again, summarize the procedural history of this case. On December 16, 2023, plaintiff moved for partial summary disposition on the issue of whether defendant failed to timely pay PIP benefits. However, plaintiff did not recite any dates, timeframes, or other relevant facts in its motion and brief that would have aided the trial court in resolving these legal questions.[6] Nor did plaintiff include any

---

[6] For example, MCL 500.3142(3) indicates that a no-fault insurer either has 30 days or 90 days to satisfy a claim for PIP benefits, depending on the circumstances. It was impossible to discern from plaintiff's motion and brief for partial summary disposition which timeframe purportedly applied.

relevant documentary evidence at that time, such as letters, faxes, or e-mails that would establish that it sent reasonable proof of the claim for PIP benefits to defendant. Thus, initially, plaintiff did not satisfy its burden of showing entitlement to summary disposition. See MCR 2.116(G)(3)(b) ("Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10).").

Thereafter, on January 2, 2024, defendant moved for summary disposition of the entire case, arguing that because it paid PIP benefits to plaintiff in October 2023, which were calculated on the basis of a 56-hour weekly cap and the "Medicare Fee Schedule," it owed no outstanding benefits to plaintiff. In that motion and accompanying brief, defendant did not directly respond to plaintiff's December 16, 2023 motion and brief for partial summary disposition, possibly because plaintiff's position was not clearly articulated in those filings.

On January 20, 2024, plaintiff filed a response brief observing that documentary evidence already before the trial court indicated that defendant periodically received bills from plaintiff between December 2021 and March 2022, but did not pay anything to plaintiff until October 2023.

Finally, on January 22, 2024, defendant filed a reply brief explaining that "Plaintiff's counsel provided discovery responses on September 12, 2023. Defendant issued payments on all applicable claims on October 31, 2023, exactly 49 days after proofs were presented." Defendant asserted that plaintiff did not provide "reasonable proof of the fact and of the amount of loss sustained" under MCL 500.3142(2) until these discovery responses. The trial court, in its written opinion and order, then accepted defendant's representations contained in its January 22, 2024 reply brief.

Strictly speaking, the trial court should not have granted either party summary disposition as to the issue of timeliness of payments under MCL 500.3142. Plaintiff's December 16, 2023 motion for summary disposition of this issue should have been denied because plaintiff did not submit any relevant documentary evidence to support that motion. Defendant, for its part, never submitted any relevant documentary evidence to the trial court during these proceedings to establish its timeliness of payments pursuant to MCL 500.3142. Because neither party submitted the required relevant documentary evidence on this issue, the presumptive position is that neither party was entitled to summary disposition of this issue. See MCR 2.116(G)(3)(b).

With that in mind, defendant did represent to the trial court in its January 22, 2024 reply brief that it did not receive sufficient documentation from plaintiff for the purposes of MCL 500.3142 until discovery in this case. Given the peculiar circumstances of this case, the trial court cannot reasonably be faulted for accepting these representations and granting summary disposition in favor of defendant on this issue, particularly where plaintiff, through the exercise of reasonable diligence, should have submitted documentary evidence in support of its position with its December 16, 2023 motion for partial summary disposition or its January 20, 2024 response brief, or both. In other words, from the trial court's perspective, the only information before it was defendant's representations that defendant did not receive sufficient documentation from plaintiff for the purposes of MCL 500.3142 until discovery in this case. Plaintiff did not represent anything to the contrary or produce any documentation to the contrary until its motion for reconsideration. Consequently, the trial court's decision to grant summary disposition in favor of defendant on this issue is understandable.

As noted, the trial court, ordinarily, has the discretion to deny the motion for reconsideration because the attached documentary exhibits submitted by plaintiff regarding timeliness under MCL 500.3142 could have been submitted by plaintiff before the trial court's original opinion and order. See *Yoost*, 295 Mich App at 220. However, as explained, the parties' presentation of the case to the trial court was unhelpful, and incomplete, which likely caused the trial court to misapprehend some of the relevant facts when it entered its original opinion and order. In a nutshell, the parties failed to properly frame and flesh out the issue before the trial court. The resulting confusion as to which party bore the burden of showing no genuine issue of material fact regarding MCL 500.3142 brings us to where we are at today. Under these circumstances, where plaintiff belatedly introduced some documents, which defendant previously possessed, but now warrant further factual consideration in the lower court, we must conclude that the trial court abused its discretion by denying plaintiff's motion for reconsideration. Therefore, we reverse the trial court's ruling on that motion, and remand to that court for further proceedings specifically to clarify whether defendant complied with the requirements of MCL 500.3142 and whether an award of attorney fees is warranted under MCL 500.3148.[7]

## IV.  CONCLUSION

The trial court correctly ruled that the 56-hour weekly cap for attendant-care benefits under MCL 500.3157(10) applies in this case, and we affirm the court on that issue. However, as a result of the parties' obfuscating and confusing presentation of the case to the trial court in their motion practice, the trial court abused its discretion when denying plaintiff's motion for reconsideration on the issue of timely payment under MCL 500.3142. Therefore, we reverse the trial court's denial of that motion, and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Philip P. Mariani
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney

---

[7] While we could reverse the trial court's grant of summary disposition in favor of defendant on the issue of timeliness under MCL 500.3142, we instead are reversing its denial of plaintiff's motion for reconsideration. Although either basis for reversal would have the same effect on remand, we reverse the ruling on the motion for reconsideration to prevent our opinion from being understood as foreclosing the possibility that either or both parties may again move for summary disposition of this issue on remand.